ODOM, Justice.
 

 This is a petitory action, brought by Hilliard Smith, who claims to own an undivided %s interest in 360 acres of land in Claiborne Parish, described as follows: E y2 and SE % of NWy4 of Sec. 35, T. 21 N, R. 5 W. He alleges that F. Boykin King claims to be the owner of the entire interest in this property and is in possession of it and refuses to recognize that plaintiff owns any interest whatsoever therein. He further alleges that the Standard Oil Company of Louisiana, Inc., and the Atlantic Refining Company claim to own oil and gas leases on the land granted by F. Boykin King. Plaintiff prays that he be recognized as owner of this fractional interest in said property,
 
 *349
 
 free from the rights claimed by the said lessees.
 

 F. Boykin King, the defendant, filed answer in which he denied that plaintiff owns any interest in the property. The lessees also filed answer in which they denied that plaintiff had any right, title, interest, or claim to the property, and set up practically the same defenses as those made by King.
 

 Briefly stated, plaintiff alleges as the basis of his claim to ownership of an undivided %8 interest in this property that it belonged to the community which existed between his grandfather, Monroe Smith, Sr., and Jane Smith, his grandmother; that the said Monroe and Jane Smith had seven children, one of whom was Burl Smith, plaintiff’s father; that, when Monroe Smith died, his % community interest in the property was inherited by his seven children, share and share alike, each inheriting a interest; that the interest of Burl Smith, plaintiff’s father, which was an undivided JÍ4 of the property, was inherited by Burl’s seven children, each inheriting an undivided %8 interest in the whole, property.
 

 The defendants denied that Monroe Smith, plaintiff’s grandfather, owned any interest in the property at the time of his death, and therefore claim that his descendants have no interest therein. They further set up the defense that, if Monroe Smith, plaintiff’s grandfather, did have an interest in the property, which was inherited by his descendants, the defendant, F. Boykin King, has acquired a perfect title to the entire interest in the property by the prescriptions of 10 and 30 years acquirendi causa.
 

 They set up other defenses, but, under the view which we take of the case, these need not be stated.
 

 There was judgment in favor of the plaintiff as prayed for, and defendants appealed.
 

 The facts, in so far as they need be stated, are that Monroe Smith, Sr., plaintiff’s grandfather, purchased the property here involved while he was living in community with his wife, Jane Smith. On April 27, 1893, he deeded the property to the Homer National Bank, the consideration being a debt which he owed the bank. On October 29, 1894, the bank sold the property to Jane Smith, plaintiff’s grandmother. The deed is notarial in form and recites that the bank, by and through its duly authorized officer and agent, “has this day sold, transferred and delivered with a full guaranty of title unto Mrs. Jane Smith of the same residence the following described land situated in Claiborne Parish La. to wit”. Then follows a description of the land, which is the same as that described in the deed from Monroe Smith to the bank. The sale was made under full warranty of title, the recited consideration being $769.65, represented by two notes, one for $151.50, due December 1, 1894, and the other for $618.15, due December 1, 1895, the notes secured by vendor’s lien on the property.
 

 It is conceded by all parties that the Jane Smith to whom the bank sold the property is the same Jane Smith to whom Monroe Smith, Sr., was married when he
 
 *351
 
 sold, the property to the bank. But the marital status of Jane Smith is not stated in the deed from the bank to her. Plaintiff predicates his case upon the theory that his grandfather, Monroe Smith, Sr., was living at the time Jane Smith acquired the property from the bank and that therefore the property fell into the community which existed between them.
 

 But the defendants deny that Monroe Smith was then living, their contention being that he died at some time between the date on which the bank acquired the property and the date on which it sold to Jane Smith. If that be true, then Monroe Smith ^owned no interest in the property when he died and had nothing to transmit to his heirs. It is conceded by counsel for plaintiff that, if Monroe Smith died prior to the date on which the bank sold to Jane Smith, plaintiff has no case.
 

 The testimony taken in the trial of the case to establish the date of Monroe Smith’s death covers several hundred pages of the record. It is conflicting, as might be expected in any case where an attempt is made to establish by parol evidence the exact date of a death which occurred at least 43 years prior to the date of taking the evidence. The trial judge evidently concluded that Monroe Smith was alive at the time Jane purchased the property from the bank, because he rendered judgment for plaintiff.
 

 But, according to our view, it is not necessary to decide that point. Conceding that the trial judge’s conclusion as to this point was correct, we think defendants’ plea of prescription of 10 years, under Article 3478 of the Revised Civil Code, is good and must be sustained. That article reads as follows: “He who acquires an immovable in good faith and by just title prescribes for it in ten years.”
 

 Referring now to the Conveyance Records of Claiborne Parish, in which this property is situated, we find that Jane Smith, who acquired the property from the bank on October 29, 1894, sold it to two of her sons, Henry Smith and Monroe Smith, Jr., on January 9, 1900. The deed was passed before a notary public in the presence of two witnesses. Jane Smith, the vendor, signed by making her mark, and the vendees signed in person. The deed was recorded in Conveyance Record Book “S”, page 468, of Claiborne Parish. The sale was made under full warranty of title, the recited consideration being $518.15, represented by three notes secured by mortgage on the land. The marital status of the vendor, Jane Smith, is not stated in the deed.
 

 The testimony shows that Henry and Monroe Smith, Jr., the vendees, lived on the property and cultivated portions’ of it continuously from the date of their purchase to January 11, 1906, when they sold it to A. B. Boykin and A. T. Boykin. The deed evidencing the sale was passed before a notary public, attested by two witnesses, and signed by the vendors in person and by A. T. Boykin for himself and as agent for A. B. Boykin. The deed was filed for record on January 11, 1906, and “Duly recorded on page 280 Book W Conveyance Records Jan 19/06”’.
 

 
 *353
 
 The deed recites that the property is sold “with full and complete guarantee of title unto A. B. Boykin & A. T. Boykin of the same residence” for the consideration of $559.85 “cash in hand paid the receipt of which is hereby acknowledged”.
 

 While the deed recites that the consideration was paid in cash, it was brought out at- the trial that the consideration in fact was the return and delivery to Henry and Monroe Smith, Jr., of certain mortgage notes due by them and held by A. B. Boy-kin, but no point is made of this, it being conceded that the vendors received valid ■consideration for the property.
 

 This is the deed which forms the basis of the 10-year prescription pleaded by the defendants. On February 12, 1916, A. B. Boykin sold his undivided % interest in the land to A. T. Boykin. A. T. Boykin died, leaving a last will by which he bequeathed the property to Mrs. Lilias Boykin King and Franklin Boykin King, share and share alike. The will was probated, and they were sent into possession of the property by judgment of the Second Judicial District Court, dated and signed June 27, 1931. Mrs. Lilias Boykin King and Franklin Boykin King owned this and other property in common, and on December 30, 1931, partitioned their holdings by notarial act, and Franklin Boykin King, the defendant in the present suit, became the owner of the entire interest in the land here involved.
 

 According to Article 3479 of the Civil Code, to acquire ownership of immovables by the prescription of 10 years, four conditions must concur, to wit: (1) Good faith on the part of the possessor; (2) a title which shall be legal and sufficient to transfer the property; (3) possession during the time required by law, which possession must be accompanied by the incidents hereafter required; (4) and finally, an object which may be acquired by prescription.
 

 It is our opinion that all four of these conditions concur in this case. A. B. and A. T. Boykin acquired the property from Henry and Monroe Smith, Jr., on January 11, 1906, by deed regular in form, passed before a notary public and two witnesses, signed by the vendors- and vendees in person, describing the property conveyed by legal subdivisions, the sale being made under full and complete warranty of title, the consideration being expressed in the deed. The deed, as we have said, was duly recorded in the Conveyance Records. Article 3483 of the Revised Civil Code provides that, to be able to acquire by the 10-year prescription mentioned in Articles 3478 et seq. of the Code, “a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title”.
 

 A. B.. and A. T. Boykin acquired the property by “just title”, as defined in the Code. They unquestionably acquired the property in good faith. Article 3480 of the Code says that “The good faith, spoken of in the preceding article, is defined in the chapter which treats of possession”. Article 503 of the Code reads as follows: “He is bona fide possessor who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of. He ceases to be a bona
 
 *355
 
 fide possessor from the moment these defects are made known to him, or are declared to him by a suit instituted for the recovery of the thing by the owner.”
 

 Article 3451 of the Code, which is found in the chapter which treats of possession, reads as follows: “The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.”
 

 It is proved beyond question that A. B. and A. T. Boykin took possession of the property immediately after they purchased it. They had just reason to believe themselves the masters of the land, the thing they possessed. The Conveyance Records show that the Homer National Bank had sold the property to Jane Smith in 1894 and that Jane Smith had sold the same property to Henry and Monroe Smith, Jr., in 1900. The Boykins lived within a short distance of where the property is situated, and the testimony shows that they were personally acquainted with Jane Smith and with Henry and Monroe Smith, Jr., and that they knew that the Smiths were in physical possession of the property and had been during the entire time from the date on which Jane Smith acquired from the bank down to the date on which the Boykins purchased in 1906, or a period of more than 12 years.
 

 There is nothing in the record to indicate, much less to show, that, if there was any defect in the title which the Boykins acquired from the Smiths, they knew anything about it. They acquired a perfect record title to the property. It is suggested by 'counsel for plaintiff that, in as much as the Boykins lived in the community where the property is situated and knew the Smith family personally, they must have know that Monroe Smith, Sr., was living at the time Jane Smith acquired the property from the bank, and that, if the Boy-kins had knowledge of this fact, they knew that Monroe Smith, Sr., owned a- % community interest in the property at the time of his death. But counsel do not say that, as a matter of fact, the Boykins did know the date on which Monroe Smith, Sr., died. Referring to this point in their brief and to the knowledge which the Boykins had, counsel say, “They no doubt knew, at least should have known, the date of the death of Monroe Smith.” There is no testimony whatever in the record to show or even to indicate that either of the Boykins knew the date of Monroe Smith’s death. At the trial of a case which we shall discuss later, A. T. Boykin testified in 1919 that he did not know the date on which Monroe Smith, Sr., died. A. B. Boykin was not living at the time that case was tried.
 

 As a matter of fact, the testimony taken at the trial of this case shows that no one seemed to know definitely the date of his death. The testimony taken on that point is about as conflicting as can be imagined. It would be unreasonable to assume that, merely because the Boykins were personally acquainted with the Smith family, they knew the exact date on which Monroe Smith’s death occurred.
 

 
 *357
 
 Referring now to the question of possession, the record shows that, immediately after the Boykins purchased the property from the Smiths in 1906, they leased it to Henry and Monroe Smith, Jr., who farmed it continuously as tenants of the Boykins for a period of more than 20 years. The record shows in fact that one of the Smiths moved off the property in 1925 and that the other remained thereon as the Boykins’ tenant for a number of years thereafter.
 

 A reading of the record leaves us in no doubt that Henry and Monroe Smith, Jr., lived on, and cultivated portions of, the property as tenants of A. B. and A. T. Boykin until the year 1916, when A. B. Boykin sold his interest to A. T. Boykin, and that they continued to cultivate the property as tenants of A. T. Boykin thereafter.
 

 In the deed from Henry and Monroe Smith, Jr., to the Boykins in 1906, there was an error in the description of the property. The property intended to be sold was the Ey2 and the SW% of NW% of Sec. 35, whereas the description in the deed is the E% and the SE1^ of SW^ of that section. This error was not discovered by the Boykins until the year 1919, when the Boykins requested the Smiths to execute an instrument correcting the description. The Smiths refused to make the correction. Whereupon the Boykins filed suit against them on September 12, 1919, to have the correction made. The Smiths employed counsel to represent them, and in the answer filed they denied that plaintiffs were the lawful owners of the property, not on the ground that the heirs of Monroe Smith, Sr., had inherited any interest therein, but on the ground that the Boykins had never in fact purchased the property.;
 

 Their real defense to the suit was that the instrument executed by them on January 11, 1906, purporting to be a deed, was in fact not intended to be such but was intended to be an act of security or mortgage on the property, and that it was understood that they had a right to redeem the property by repaying the indebtedness thereon within a period of five years.
 

 They alleged in their answer that they had occupied the property continuously since the said instrument was executed in 1906 down to the time the suit was filed, not as tenants of the Boykins, but as owners of the property, and that the amounts they had paid during each year were paid as interest on the debt and not as rent, as alleged by the plaintiffs.
 

 There was judgment in favor of plaintiffs, correcting the description. The Smiths appealed to the Court of Appeal, where the judgment of the trial court was affirmed.
 

 Judge Thompson, then a member of the Court of Appeal, Second Circuit, and later one of the justices of this court, wrote the opinion. In discussing the issues involved in that suit, Judge Thompson said:
 

 “It is further alleged in the answer that it was not the intention in executing the said deed of date January 11th, 1906, to make a sale of the lands but that said act was intended as a mortgage to secure the payment of a loan of money which was made to them ..by the said Boykins, that defendants were so advised and informed
 
 *359
 
 at the time of signing the said instrument and that they had since paid the said loan in full. * * *
 

 “There is no evidence in the record whatever to sustain the charge made by the defendants that the deed was intended to be a mortgage or as a security for debt or that defendants were advised and informed at the time of signing the act of sale that they were giving a mortgage on the land. It is true that the defendants do say in their testimony that they owed the Boykins a lot of money and that they were to pay the- land out in five years, but their testimony is not sustained by the records.”
 

 On the question as to whether or not the Smiths had occupied the property as owners or as tenants of the Boykins, Judge Thompson said in his opinion :
 

 “The evidence abundantly disproves the defendants’ statement and shows that after defendants made the sale to Boykins in 1906 they were permitted to remain on the property by paying rent annually which was represented by the rent notes executed each year by the defendants.
 

 “It is also shown that the property was never assessed to the defendants and that they never paid any taxes on - the land. That after the deed made to the .Boykins in 1906, the land was assessed to them and they paid the taxes thereon.”
 

 The evidence taken at the trial of that case is found in the transcript filed in the present suit. We have read it and find the facts then brought out to be as Judge Thompson stated them.
 

 The record further shows that, in the year 1920, the -Boykins filed two suits in the district court of Claiborne Parish, one against Henry Smith and one against Monroe Smith, Jr., to collect- certain amounts as rent on this property for the years 1918-1919, and that the defense to those suits was that the defendants did not occupy the property as tenants and that they therefore owed no rent. The testimony taken at the trial of those cases is not in the record, but the judgments are. Each was in favor of the plaintiffs and against the defendants, specifying that the amount of the judgment was for rent, and the plaintiffs were granted a lessor’s lien and privilege on the crops and other property then on the place.
 

 There is nothing in the record to show that, from the date on which the Boykins acquired the property from the Smiths in 1906 down to the date the suit was filed by the Boykins in 1919 to correct the error in the deed — a period of more than 13 years —, the Boykins had the slightest intimation from any source that either Henry or Monroe Smith, Jr., or any of the other heirs of Monroe Smith, Sr., were claiming to own any right or title in or to the said land. Henry and Monroe Smith, Jr., testified in the suit to correct the description that the Boykins knew that the amounts they were paying annually were payments of interest and not rent. But this was disproved to the satisfaction of the Court of Appeal.
 

 As touching the question whether Henry and Monroe Smith, Jr., had occupied the property as owners or as ten
 
 *361
 
 ants o'f the Boykins, Judge Thompson said in his opinion that the evidence abundantly disproved the defendants’ statements and showed that, after defendants made the sale to the Boykins in 1906, they were permitted to remain on the property by paying rent annually, the amount of the rent being represented by rent notes executed each year by the Smiths. As we have already stated, the testimony on which that opinion was based is in the record now before us, and, after .reading it, we are convinced that Judge Thompson’s opinion was correct. That case was tried in 1919.
 

 The present suit was tried in 1938. Monroe Smith, Jr., was not. then living, but Henry was and was called as a witness. He again testified, as he did in the former suit, that he and his brother occupied the property as owners and not as tenants. His wife gave similar testimony. But- their testimony was impeached by several witnesses. One was W. B. Williams, who testified in the former suit. He said he had paid to the Boykins for the Smiths, on different occasions, various sums as rent on the land. He said he paid some rent notes for them. Asked fon whose account he paid the rent, he said, “In 1911 I paid Mr. Boykin $25. charged Henry Smith up with rent for $25.00. Whether or not that was a-note or not I don’t know. And later on I paid him two more notes, those were notes, 1927 and 1930, they were rent notes. $27.50 and $30.00 paid them later than that.”
 

 He wás asked by the Judge, “Do you know how those notes read?” His answer was, “It was for land rent. Just said for land rent. I wouldn’t be sure, but I was paying for rent on land that Henry worked. I don’t know how it was stated though.” .Mr. Williams was a merchant with whom Henry traded.
 

 Mr. H. E. Patton testified that he had paid to Mr. Boykin rent for Henry Smith. Mr. C. S. L. Patton testified that Plenry Smith told him he was renting the land for one-fifth. Besides this, the record teems with evidence, uncontradicted, that the Boykins went upon the land during crop season, carried planting seed and provisions, supervised the planting and cultivation of crops, built houses and fences thereon, and generally exercised complete dominion and control over the property; that they exercised all the prerogatives of owners or masters of the thing.
 

 These prerogatives were not exercised spasmodically or during certain periods of the time, but continuously from January, 1906, when they acquired the property, on down to 1938, when the present suit was filed — about 32 years. And here it may be added that they sold timber and repeatedly leased the land for oil and gas production. We are informed that there are now a number of producing oil wells on the land, brought in under leases executed by them.
 

 Defendants have not been disturbed in their possession except in so far as it may be said that -the answer filed by the Smiths to the suit for correction of the description in 1919 was a disturbance or information that another was claiming title. But at that time they had been in actual physical possession, through tenants, in good faith, under just title, for more than 10
 
 *363
 

 years. Their'
 
 title to the E% of Sec. 35 was then good', under the above cited articles of the ■Civil-Code treating of 10-year prescription, and under the ruling of this court in the cases hereinafter cited.
 

 But the same cannot be said of their title to the SE^ of NW% of Sec. 35. The reason is that the deed from the Smiths to them did not include that 40-acre tract, but instead described the SE14 of SWJ4 of that section, which the Smiths did not own.' Even though defendants may have possessed the SEJ4 of NWJ4 of Sec. 35- for the required length of time, their possession up to the year 1919 was without title, and 'they. could not acquire title by the prescription of 10 years. To acquire title to immovables by the prescription of 10" years, one must hold possession as owner under a deed translative of the property possessed. Albert Hanson Lumber Co. v. Angelloz, 118 La. 861, 43 So. 529; Castera’s Heirs v. New Orleans Land Co., 125 La. 877, 51 So. 1021; Bayard v. Baldwin Lumber Co., 157 La. 994, 103 So. 290; Matthews v. Olla State Bank, 164 La. 463, 114 So. 98.
 

 But, at the time the present suit was filed, they had acquired a good and valid title to the SEJ4 of NW% of Sec. 35, by the prescription of 10 years. In the suit of Boykin v. Smith above referred to, the error in the description was corrected. The judgment which was rendered and signed July 10, 192Q, “ordered, adjudged and decreed” that the deed from Henry and Monroe Smith, Jr., to A. B. and A. T. Boykin, dated January 11, 1906, recorded In Book “W”, page 280 of the Conveyance Records of Claiborne Parish, be corrected “so as to include and describe the SEJ4 of NWJ4, Section 35, Township 21, North, Range- 5 West, instead of SE% of SWJ4 of said Section 35”.'
 

 That judgment was recorded in Conveyance Record Book “23”, at page 505, of .Claiborne Parish, on September 15, 1920, and was affirmed by the Court of Appeal, and is final as to the parties to the suit. From the date that judgment became final, defendants had title to that 40-acre tract which was of equal dignity to that which they acquired to the other land in 1906. Thereafter, defendants were good-faith possessors of this 40-acre tract just as they were of the other acreage, and they have held possession under that judgment continuously and undisturbed for more than 10 years since it was recorded and became final. They have acquired it, too, by the prescription of 10 years.
 

 For the reasons assigned, the judgment appealed from is reversed and set aside, and it is now ordered that plaintiff’s demands be rejected and that his suit be dismissed.