HIGGINS, Justice.
 

 This is a petitory action in which the plaintiffs seek recognition as owners of an undivided 22/48ths interest in 108 acres of land in the Rodessa oil field, Caddo Parish, Louisiana, described as:
 

 “The W% of the SE1/^ and the East 28 acres of the NE% of the SW(4 of Section 13, Township 23 North, Range 16 West, Caddo Parish, Louisiana.”
 

 Minerals have been produced from the property and the plaintiffs have also prayed for an accounting of their share of the proceeds of the sale thereof.
 

 The defendants pleaded prescription of ten and thirty years (Rev.Civ.Code, arts. •3478, 3499) acquirendi causa, estoppel under Article 1839 of the Revised Civil Code, and estoppel en pais.
 

 The district judge rendered judgment in favor of the plaintiffs, as prayed for, and ordered an accounting, but on motion of the defendants, a new trial was granted. Additional, testimony was introduced and the trial judge .then rendered judgment in favor of the defendants, sustaining their plea of ten years acquisitive prescription and rejecting the plaintiffs’ demands. The plaintiffs have appealed.
 

 The defendants have answered the appeal and pray that their pleas of estoppel be sustained and that the deed of their author in title be recognized as translative of title and the proper basis for a plea of ten years acquisitive prescription.
 

 The following facts are undisputed:
 

 On
 
 January 10, 1896,
 
 T. R.
 
 Simmons and
 
 his wife sold to N. E. Drake the property in controversy. Although N. E. Drake was at the time a married woman, there was no reference in the deed to her marital status.
 

 At the time of the purchase on January 10, 1896, Mrs. N. E. Drake was married to W. M. Drake. This marriage continued until December 19, 1899, when W. M. Drake died intestate, leaving as his heirs the three children of his marriage with Mrs. N. E. Drake — Bertha M. Drake, Olive C. Drake, and Alvin E. Drake,.
 

 On February 7, 1903, Mrs. N. E. Drake deeded the property in controversy (by a description which plaintiffs contend was defective) to M. T. Atkins, for $125. The vendor in this deed was referred to as Mrs. N- E- Drake, but there was no other reference to her marital status.
 

 
 *130
 
 On June 21, 1906, Alvin E. Drake died without issue and without having ever been married, leaving as his sole heirs, his mother, Mrs. N. E. Drake, and his two sisters, Bertha M. Drake and Olive C. Drake.
 

 On September 21, 1925, M. T. Atkins sold the property in controversy to A. C. Pitts, the husband of Mattie Spearman Pitts. A. C. Pitts subsequently died and the District Court of his domicile recognized Mrs. Mattie Pitts as his widow in community, and his two children, Mancel Pitts and Gladys Pitts, as his sole heirs.
 

 Bertha Drake subsequently married Otis' Gray. Mrs. Bertha Drake Gray died in 1931, leaving as her sole heirs her two children, Geneva Gray, and Edith Gray, who is now Mrs. Edith Gray Asbury. Olive C. Drake married T. C. Harrill, Jr., and is now Mrs. Olive C. D. Harrill.
 

 On September 18, 1934, the widow and heirs of A. C. Pitts executed an oil and gas lease in favor of R. W. Norton, covering the property in controversy. This lease was assigned by Norton to United Gas Public Service Company, and by United Gas Public Service Company to Union Producing Company.
 

 The defendants averred that when M. T. Atkins purchased the property from N. E. Drake on February 7, 1903, he acquired the same in good faith on the representation and under the belief that his vendor was the sole owner thereof; that Atkins, under a deed translative of title, went into actual, physical, open and peaceful possession of the property, believing himself to be the owner thereof; that immediately following his acquisition of the property, he constructed a residence on it, cultivated and improved the land, and paid all of the taxes due thereon; that he exercised acts of control and ownership thereof continuously from 1903 until he sold the property to A. C. Pitts on September 21, 1925, without any question as to his title or his right to possession and ownership thereof; that during the 22 years that Atkins and his family remained in exclusive possession of the property as owners thereof, various contracts, mortgages, leases and other documents affecting the property were executed by him and recorded, which constituted notice to the plaintiffs and all others of the rights which he claimed in the property; that A. C. Pitts, his widow and heirs, during the 13 years that they possessed the property as owners, executed and recorded upon the public records of Caddo Parish, La., various contracts, leases, mortgages and other documents affecting the property, which evidenced their possession and claim of ownership thereof and constituted notice to the plaintiffs and the world that they were exerting exclusive rights of ownership and possession of the property; that Pitts, his widow, and his heirs had actual, physical possession of the property during the. entire .period of their ownership; that they cultivated and improved the same peaceably and continuously to the date of this suit, February 18, 1938; that plaintiffs, knowingly, for more than 35 years, have permitted Atkins and his vendees in title to take exclusive possession and control of the property and to remain in possession of the same as sole, owners, without any notice whatsoever to defendants of their .claim; and that plaintiffs are estopped fo deny the
 
 *132
 
 validity of the defendants’ title, the defendants having dealt in good faith with the apparent owners of the property, and having acquired valuable rights and expended considerable money thereon, under the belief that they were dealing with the true owners thereof. The defendants introduced evidence to establish the above-recited facts.
 

 The plaintiffs admit that the defendants have been in possession of the property for more than ten years, but contend that the plea of prescription of ten years cannot prevail, because, first, the defendants do not have deeds translative of title, and second, because of the alleged bad faith of the defendants.
 

 Under the first proposition, the plaintiffs argue that the deed from N. E. Drake to M. T. Atkins is defective because of the failure to properly describe the property. Their contention is that the description of the property is defective because the deed describes 120 acres by governmental description, giving the quarter sections, section number, township number and range, and ending with a reservation of 12 acres therefrom, but does not describe the excepted 12 acres and, therefore, the grantee cannot locate the 108 acres which were intended to be purchased.
 

 We quote the following from Volume 16, American Jurisprudence, page 619:
 

 “If an exception' is not described with certainty, the grantee shall have the benefit of the defect. . In other words, the exception, and not the whole deed, is void; and the grantee is invested with title to all the property mentioned in the deed disregarding the exception.”
 

 The above text is supported by a number of decisions of the Supreme Court of various states.
 

 The rule on the subject is thus stated in Volume 18, Corpus Juris, pages 347 and 348:
 

 “An exception should describe the property with sufficient certainty. Uncertainty or vagueness of description renders a reservation void unless there is something in the exception, deed, or evidence whereby it can be made sufficiently certain. * * *
 

 “A grant is not, however, necessarily vitiated because of the invalidity of an attempted reservation, nor because of an ambiguity in The exception. The fact that an exception is void for uncertainty has the effect merely, to make the conveyance operative as to the whole tract, although it has been held that this rule does not apply where there is but a single description which is intended to describe the land conveyed. * * * An exception of a certain number of acres out of the corner of a square tract is sufficiently definite.”
 

 See, also, 27 R.C.L. 317 and Lange v. Waters, 156 Cal. 142, 103 P. 889, 19 Ann. Cas. 1207, 1209.
 

 In Southern Iron & Steel Co. v. Stowers, 189 Ala. 314, 66 So. 677, 679, the Court said:
 

 “Where a deed of bargain and sale on valuable consideration describes an entire tract of land * * * excepting a part, and the description of the part is vague and uncertain, the uncertainty affects the
 
 *134
 
 exception only, and that, riot the grant, will fail. This results from two principles: That a deed delivered must have effect, if possible; and the bias of presumptive construction is inclined against the grantor who assumes to speak.”
 

 The cases cited by the plaintiffs on this question deal with the description of the property intended to be conveyed and do not cover the situation presented here. In the instant case, it appears that the twelve acres of land in the tract in question had been previously reserved therefrom by William B. Spearman, the owner, in the deed to Thomas R. Simmons, Mrs. N. E. Drake’s vendor, and that the act of sale, in which the reservation was made by Spearman, adequately identified the twelve acres of land. There is no doubt that the reservation in the Drake to Atkins sale was intended by the parties to cover these same twelve acres of land. The rights and title of the owner of these twelve acres are not in dispute, in this case. We, as the district judge did, also resolve this point against the plaintiffs.
 

 The plaintiffs’ second attack on the description in the deed is based on the fact that the deed does not show the state and parish in which the property is located, fails to state whether or not the township is north or south, and does not specify whether the range is east or west. The Court will take judicial notice of the fact that there are no southern townships or eastern ranges in Caddo Parish and that all property located in Caddo Parish, Louisiana, is in some northern township or in some western range. Therefore, if we may infer that the property described in the deed is located in the parish where it is recorded, i. e., Caddo Parish, or if the Court may consider other deeds in the chain of title, or the evidence relating to the identity of the property, the plaintiffs’ argument will necessarily fall.
 

 Courts are always liberal in construing the description of property in deeds, so as to sustain, rather than defeat, the conveyance. 16 Am. Jurisprudence, 585, 586; 18 C.J. 180, 181.
 

 The rule that the description in a deed will be sustained whenever the instrument affords any description by which the property can be identified, either through the description in the deed itself or by means of extrinsic, competent evidence, has been frequently approved by this Court. t
 

 In Willis v. Ruddock Cypress Company, 108 La. 255, 32 So. 386, 387, in a petitory action like the present suit, there was an error in the range in the description of the property. The Court held that the error could be disregarded by reason of the other portions of the description of the property and by competent proof of facts not shown in the deed. The Court said:
 

 “Finally, plaintiffs contend that the land adjudicated to the state at the sheriff’s sale is not the same for which suit is now brought. The land sold is the land that was owned by Joseph Désert. This is shown by a plat introduced in evidence by plaintiffs. The description in the deed agrees with the description in the plat in name, boundaries, and acreage, and differs only in that section 25, which is the land in controversy, is put by the deed in
 
 *136
 
 township 10, range 8, whereas by the plat it appears to be in township 10, range 7. That this is an immaterial error is not debatable in the light of past adjudications of this court bearing on errors in descriptions according to government surveys. Error in the range has time.and again been held immaterial where by the other parts of the description, and even by competent proof aliunde, the land was identified.”
 

 In the case of Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489, 492, the Court stated the rule of law as follows :
 

 “On the other hand, it suffices if the description be ‘such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary.’ 36 Cyc. 591 (verbo Specific Performance).”
 

 Notwithstanding the fact that the Court resorted to contemporaneous descriptions of the property made in other deeds that were of record and also considered the descriptions in all of the deeds made by the vendor of property he owned, the property could not be sufficiently identified. This case also shows, that the law does not •require the description of the property to be determined by .reference to the deed alone. . .,
 

 In Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 650; the court said:
 

 “The law does not require that a deed, to support the prescription of 10 years, shall contain such ■ a description that the land can be identified without reference to other records.” Smith v. Chappell, 177 La. 311, 148 So. 242; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Greening v Natalie Oil Company, 152 La. 467, 93 So. 682; Robinson v. Atkins, 105 La. 790. 30 So. 231; Lawrence v. Young, 144 La. 1, 80 So. 18, and 1 Am. Jurisprudence 906
 

 We know of no reason, and none has been pointed out, why a deed, which would be sufficient to convey property as between the parties thereto, or which would be sufficient in a petitory action between different parties claiming the same proper ty, would not likewise be sufficient as a basis for ten years’ • prescription. The public records show that the vendor, N. E. Drake, owned property in Caddo Parish, Louisiana, identical to that' described in the deed. All of the deeds and other documents in the chain of title show that the property covered by this description in Caddo Parish, Louisiana, was being claimed by M. T. Atkins and his vendee in title.
 

 The deed from T. R. Simmons to N. E. Drake, dated January 10, 1896, states that the property is in Caddo Parish, Louisiana, and is in Township 23, Range 16 West. A correction deed from W. B. Spearman, a former owner of the property, in favor of M. T. Atkins, dated October 5, 1915., refers to a previous deed executed by W. B. Spearman to T. R. Simmons, who was the. vendor in title of N. E. Drake, and this correction deed indicates that the excepted twelve acres referred to in that deed and likewise referred to in the deed from N. E.- Drake to Atkins were located in Caddo Parish, Louisiana.
 
 *138
 
 The various mineral leases executed by M. T. Atkins beginning in 1910 and continuing through 1925 show that the property is in Caddo Parish, Louisiana. The affidavit of A. C. Pitts, dated April 8, 1920, shows the property to be in Section 13, Township 23 North, Range 16 West, Caddo Parish, Louisiana, and the deed from M. T. Atkins to A. C. Pitts on September 21, 1925, also shows the property to be in Caddo Parish, Louisiana. All of the leases and contracts executed by Pitts and his heirs from 1925 to the date of this lawsuit show the property to be in Caddo Parish, Louisiana, and in Township 23 North, Range 16 West. The public records, therefore, clearly reflect the identity and the location of the property referred to in the deed from N. E. Drake to M. T. Atkins.
 

 In addition to the recorded documents, the evidence taken on the trial of the case clearly shows that the property delivered by N. E. Drake to M. T. Atkins, under the deed which is attacked by plaintiffs, was property in Township 23 North, Range 16 West, in Caddo Parish, Louisiana. Furthermore, the deed itself shows that the vendee resided in Rodessa, Caddo Parish, Louisiana, and that the instrument was acknowledged and accepted and, therefore, completed in Caddo Parish, Louisiana; and that the deed was recorded in Caddo Parish, Louisiana, in accordance with the provisions of Article 2251 of the R. C. C. These circumstances may also be considered in clarifying the faulty description. 16 Am. Jurisprudence 587.
 

 It is our opinion that the deed by Mrs. Drake to Atkins was translative of title and therefore, is a proper basis upon which to rest a plea of prescription of ten years.
 

 Plaintiffs contend that defendants are in . legal bad faith for two reasons: (1) That both Atkins and Pitts knew the deed from Mrs. N. E. Drake to Atkins was not translative of title and for that reason they could not believe they were acquiring a good title; (2) That both Atkins and Pitts knew N. E. Drake was Mrs. N. E. Drake and they were, therefore, placed upon inquiry as to her marital status atld community rights at the time of her purchase of the property in 1896, and her marital status and community rights as of the date of the sale by her to Atkins in 1903.
 

 The first proposition is disposed of by our conclusion that the description in the Atkins deed was valid.
 

 We shall now discuss the second reason. Assuming that Atkins had actual knowledge or notice of Mrs. Drake’s marital status and community interest at the time he purchased the property and was, therefore, in bad faith, but, without deciding that factual issue, a view most favorable to the plaintiffs, we shall pass to a consideration of the good faith of Pitts.
 

 W. M. Drake and Mrs. N. E. Drake were married oh November 16, 1890, in Crawford County, State of Arkansas. There were three children born of the marriage. On January 10, 1896, T. R. Simmons, the owner of the land in question, sold it to Mrs. Nancy Elizabeth Drake under the name of N. E. Drake. The husband built a two-room house on the property,, which was oc
 
 *140
 
 cupied by the family in December, 1896, when they moved to Caddo Parish, Louisiana, from Arkansas. They remained on the property for a period of five months and then moved away. In December, 1898, they returned and again set up their residence in the small house where they lived as husband and wife, until his death on December 19, 1899. On February 7, 1903, Mrs. N. E. Drake sold the property to M. T. Atkins, who, on September 21, 1925, sold it to A. C. Pitts. Both Atkins and Pitts were dead at the time of the trial.
 

 After having reviewed the record and the authorities, we conclude that the decision of the trial court on the question of A. C. Pitts’ good faith is justified under the law and evidence of this case. We, therefore, quote the opinion of the district judge with approval:
 

 “The first question that will be considered is the legal good faith of A. C. Pitts. It is conceded that the property is correctly described in the deed from M, T. Atkins to A. C. Pitts; that it was a deed translative of ownership, and that Pitts and his heirs have had possession for more than ten years prior to the filing of this suit. We shall review the evidence involving the legal good faith of A. C. Pitts.
 

 “Mr. A. C. Pitts was the Notary who took the acknowledgment of M. T. Atkins in 1903 when he purchased the property from Mrs. N. E. Drake, * * *.
 

 “There is filed in evidence an affidavit executed by A. C. Pitts on April 8, 1920, which contains the following statements:
 

 “ '* *■ * he has lived at Rodessa, Cad-do Parish, Louisiana, since 1895 and was in the mercantile business there for fifteen years, that he owns lands in Section 13, Township 23 North, Range 16 West, Caddo Parish, which adjoin lands owned by M. T. Atkins and that he has known the M. T. Atkins land and has been familiar in a general way with the title thereto for over 20 years; * * * 3:
 
 Affiant further says that there was only one Drake and she was Mrs. N. E. and is the same person who acquired this land as N. E. Drake
 
 * * * 5: That said Atkins and his ancestors in title have had open, peaceful, public and uninterrupted possession of said land for over thirty years.
 

 “ ‘A. C. Pitts.’
 

 “(Italicizing ours.)
 

 “Mrs. N. E. Drake testified that her husband traded at the A. C. Pitts store, and •following the death of her husband, she went to this store to settle the account. She testified that she did not know A. C. Pitts herself, and did not say that the settlement was made with A. C. Pitts, personally. In this connection a Mr. W. E. Brown testified as follows:
 

 “ ‘Q: Did you ever see Mr. Drake in Rodessa? A: Yes.
 

 “ ‘Q: Did you ever see him in Mr. Pitts’. store over there? A: Yes, I seen him in A. C. Pitts’ store over there in Rodessa and Mr. Thomas’. Now I am not personally acquainted with Mr. Drake, but I knew who he was, you know, and pas.sed right in front of his home there going to town, and I knew him, all right. I wasn’t personally acquainted with him.’
 

 
 *142
 
 “Mr. Joe M. Wynn testified that he had seen W. M. Drake making purchases at the Pitts and the other stores in Rodessa, but that he had never seen A. C. Pitts and W. M. Drake together.
 

 “As against this testimony we have that of Mrs. Pitts, the widow of A. C. Pitts, who says that she did not know W. M. or Mrs. N. E. Drake. She says that she kept the books, which have since been destroyed by fire, but that she did not know of the Drakes ever trading at their store.
 

 “The testimony revealed that W. M. Drake and his wife were married in Arkansas in 1890. That they moved to Louisiana in 1896 and bought this property in question from T. R. Simmons. At this time they only lived in this community for about five months, returning in December, 1898, and remaining until December, 1899. Mr. A. C. Pitts moved to the community in 1895.
 

 “Article 3481 of the Civil Code provides that:
 

 “ ‘Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.’
 

 “The burden in this case is on the plaintiff to prove legal or actual bad faith on the part of A. C. Pitts, or knowledge of the facts that would impute bad faith, or, at least his failure to investigate constituted such negligence on his part that bad faith would be imputed to him.
 

 “In National Park Bank v. Concordia Land & Timber Co., 159 La. 86 [105 So. 234], the Court said:
 

 “ ‘Notice of facts which ought to excite inquiry, and which, if pursued, would lead to knowledge of other facts, operates as notice thereof.’
 

 “In the case of Blunson v. Knighton, 140 So. 302 [307], the Court of Appeal said:
 

 “ ‘One is not a possessor in good faith who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts and yet acted at his peril.’
 

 “The plantiffs rely largely on the affidavit executed by A. C. Pitts, in 1920. We think that all that was intended by that affidavit and all that it purports to prove is that A. C. Pitts knew that N. E. Drake who acquired the property is the same as Mrs. N. E. Drake who sold the property. This knowledge or information possessed by Pitts does not necessarily prove that Pitts knew of the family of W. M. Drake and N. E. Drake; nor does it prove that he had such knowledge of the circumstances surrounding the purchase of the property by N. E. Drake as would charge him with bad faith in 1925.
 

 “We cannot say that in 1925, because A. C. Pitts knew N. E. Drake and Mrs. N. E. Drake were one and the same, that this was knowledge of such circumstances that should have caused him to investigate and that his failure constituted negligence on his part. Possibly this would suggest to an attorney to investigate the marital status of N. E. Drake, but we do not believe that it is such knowledge as would place him in bad faith when purchasing from the vendee of N. E. Drake, and particularly when this vendee had been in possession of the property for twenty-two years.
 

 
 *144
 
 “We were in error in presuming or assuming that A. C. Pitts knew of the community status of this property because he knew Mrs. Drake and therefore must have known of the death of W. M. Drake. We do not think that we were justified in making this assumption, particularly where the effect of it would be to destroy the presumption of law that A. C. Pitts was in good faith. Counsel for the plaintiffs, in substance, says that because of the knowledge which Pitts possessed with reference to the Drake family, he was charged with the duty of making an investigation and with the knowledge which he would have acquired, he would have known that Mrs. N. E. Drake, owned only a one-half interest in the property and therefore that was all that was owned by M. T. Atkins, his vendor. Also that Pitts being one of the notaries on the deed is therefore chargeable with notice that the deed was defective in description and therefore could not serve as the basis of prescription of ten years to give his vendor a valid title. In this connection, the following statement of the law is taken from the recent case of Tyson v. Spearman, 190 La. 871, 183 So. 201 [209].
 

 “ ‘This Court said, in the case of Maxwell v. W. B. Thompson & Co., 175 La. 252, 143 So. 230, 233. that “notice, in its accepted legal sense, means such information on the part of the person charged with notice as would put a prudent person on inquiry to ascertain the true or actual facts,” and in the case of National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234, 239, that “notice of facts which ought to excite inquiry, and which, if pursued, would lead to knowledge of other facts operates as notice thereof.” ’
 

 “It is stated in Ruling Case Law, Volume 20, under the title Notice, Section 7, that:
 

 “ ‘Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. * * * Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge.’
 

 “As we have heretofore stated, our previous error was in assuming that because the parties lived in this small community, A. C. Pitts knew the Drakes and had such knowledge that should have put him on inquiry. We should not have assumed this fact, when the result thereof destroys the presumption of good faith created by article 3481 of the Civil Code.
 

 “In the recent case of Smith v. King, et al., 192 La. 346, 188 So. 25 [28], the Court had before it a question very similar to the one now presented. In that case Monroe Smith Sr., plaintiff’s grandfather, sold the property in question to the Homer National Bank in 1893. Slightly over one year later the Bank sold the land to Jane Smith, plaintiff’s grandmother. It was conceded that Jane Smith is the same Jane Smith who was the wife of Monroe Smith at the time he sold to the Bank,
 
 although the marital status of Jane Smith was not stated in the deed when the land was conveyed to her.
 
 Jane Smith sold the property to two of
 
 *146
 
 her sons January
 
 9,
 
 1900, who, in turn, sold the property to A. B. and A. T. Boykin, January 11, 1906. A. B. Boykin conveyed his % interest to A. T. Boykin in 1916. A. T. Boykin later died, leaving the property by will to the defendants in this suit. In discussing the facts, the Court said:
 

 <n* * * The Boykins lived within a short distance of where the property is situated, and the testimony shows that they were personally acquainted with Jane Smith and with Henry and Monroe Smith, Jr., and that they knew that the Smiths were in physical possession of the property and had been during the entire time from the date on which Jane Smith acquired from the bank down to the date on which the Boy-kins purchased in 1906, or a period of more than 12 years.’
 

 “The Court held that there was no evidence to show that the Boykins knew the date of the death of Monroe Smith, Sr. In that case the Counsel for the plaintiff said:
 

 “ ‘They no doubt knew, at least should have known, the date of the death of Monroe Smith [Sr.].’
 

 “The Court had before it the facts of personal knowledge of the family on the part of the purchasers, the fact that they were purchasing from members of the family, and that the deed from the bank did not show the marital status of Jane Smith, still the Court did not hold that these were such facts as should have placed the Boykins on notice and cause them to make inquiry-.
 

 “The only evidence which is uncontradicted in the present case is the affidavit of Pitts that N. E. Drake, who acquired the property, was the same as Mrs. N. E. Drake. In the absence of positive proof that he was personally acquainted with the Drakes, we can’t say that he was negligent in not making inquiry in 1925, some 29 years after the Drakes had purchased the land, and 22 years after they had sold it.
 

 “While we do not say that the case of Smith v. King, et al., supra, is squarely in point and decisive of the case now presented, to say the least it is most persuasive. The Court did not hold that the Boykins should have made inquiry where it was shown that they had personal knowledge of the Smith family during the entire time Jane Smith and her sons owned the property, which was only 12 years prior to the purchase. So in this case where the proof is not positive of Pitts’ knowledge of the Drake family, we cannot say' that A. C. Pitts should have inquired 22 years later, during which time his vendor, M. T. Atkins, had had undisturbed possession of the property.
 

 “Plaintiffs rely largely on the case of Blunson v. Knighton, supra, as being decisive of the question now before the Court. In that case the Court stated that the pleadings showed that Harman had examined the records and that they disclosed that Knight-on was the husband of Eliza Williams Knighton in 1911, whereas, the mortgage given to Harman in 1913 recited that he was ‘a divorced man.’ In passing on this question the Court of Appeal said:
 

 «<* * * Here we have the deed of purchase of Abe Knighton and the mortgage he executed upon the property both
 
 *148
 
 notifying Harman that there were community rights involved in the property, which, under the authorities, destroys Harman’s good faith. In our view, Harman at least was not technically in good faith, and unless he was, his good faith possession cannot be maintained.’
 

 “We do not think this case is in any way applicable to the case now presented. Here we have no marital status reflected in the record, and our conclusion is that there is insufficient evidence to overthrow the presumption of good faith which the law gives to A. C. Pitts.
 

 “Counsel for plaintiffs also contend that because A. C. Pitts was the notary who took the acknowledgment of M. T. Atkins when he purchased the property, he is charged with notice of the error in the description of the land contained in the deed to Atkins, and that therefore he knew at the time of his purchase in 1925 that his vendor did not have a valid title to the property in this case. Plaintiffs rely on the case of Industrial Lumber Company v. Farque, 162 La. [793] 794 [111 So. 166, 168], wherein the Court said:
 

 “ With particular reference to defendant Fairchild, it may be said that, as he was the notary before whom the deeds from Farque to White and from White to the plaintiff were passed, he must be charged with notice of those deeds, especially as the deed from White to plaintiff was immediately recorded, and presumably by himself, for the law requires: [here the Court quoted Article 2251 of the Civil Code].
 

 “ ‘Act 48 of 1890 was in effect when the sale from White to the plaintiff was passed. It is also noted that the defects in the title by which Fairchild claims to have acquired the property, are patent upon its face. It is therefore apparent that Fairchild is not a possessor in good faith, and for this reason he is debarred from pleading prescription in this case.’
 

 “In the cited case the Notary, during 1900, passed two deeds to the property involved, the second being to the plaintiff. Two years later this same Notary purchased the property from the vendor in the first deed that he executed as a Notary, the vendee in the second deed being the plaintiff in the suit against him.
 

 “The facts of the case now before the Court do not justify charging Pitts with knowledge of a defect in the description of the deed from Drake to Atkins executed 22 years before and particularly is this true when Pitts did not prepare the deed, but merely took an acknowledgment from the vendee, M. T. Atkins. The proper and just rule in such a case is found in 20 R.C.L., page 354.
 

 “ Where it is sought to charge a person with notice in a particular transaction, it is not enough that he had previously received notice of the fact while engaged in another transaction, where the knowledge thus acquired had been forgotten. But if it is apparent that the knowledge acquired in the previous transaction was present in his mind at the time of the subsequent transaction, he is chargeable therewith, and the fact that it was so present in his mind may
 
 *150
 
 be the inference from the proximity'of the transactions.
 

 ******
 

 “ '*
 
 * * And where a deed contains recitals affecting a parcel of land in which the grantee is not then interested, but which he afterwards purchases, he is not charged with notice by the recital which he should have seen in his first purchase.’
 

 “We therefore do not think that A. C. Pitts is charged with notice of the defect in the description of the land in the deed from Mrs. N. E. Drake to M. T. Atkins.
 

 “Our conclusion that A. C. Pitts was in good faith when he purchased the land from M. T. Atkins, in 1925, makes it unnecessary to review the other questions passed on in our other opinion.
 

 “For the reasons assigned, the rehearing is granted, and there is now judgment sustaining the plea of the prescription of ten years acquirendi causa filed by the defendants and rejecting the demands of the plaintiffs at their.cost.”
 

 The opinion of our learned brother below is in accordance with the views expressed by this Court in the following cases: Smith v. King, 192 La. 346, 188 So. 25; Nethery v. Louisiana Central Lumber Co., 175 La. 753, 144 So. 486; Johnson v. Sugar, 163 La. 785, 112 So. 721; Scott v. Dickson, 148 La. 967, 88 So. 235, and Keller v. Summers, 192 La. 103, 187 So. 69.
 

 For the reasons assigned the judgment appealed from is affirmed at the appellants’ costs.