HAMITER, Justice
(dissenting).
How this plaintiff can succeed on his title, which expressly and specifically excepts from its coverage the property in controversy, is beyond my comprehension. The majority holding that he should be permitted to do so plainly does extreme violence to the well-recognized legal principle, long established in our jurisprudence and enunciated in countless opinions, that for success in a petitory action the plaintiff *751 must rely on the strength of his own title and not on the weakness of his adversary. Emerson v. Cotton, 209 La. 1003, 26 So.2d 16; Parham v. Maxwell, 222 La. 149, 62 So.2d 255 and Thurmon v. Hogg, 225 La. 263, 72 So.2d 500. See, also, Code of Practice Article 44, which recites: “The plaintiff in an action of revendication must make out his title, otherwise the possessor, whoever he be, shall be discharged from the demand.”
The majority holding appears to be predicated almost wholly on our decision in Harrill v. Pitts, 194 La. 123, 193 So. 562. But clearly that case is inappropriate, for the excepted land therein was not in contest as is the excepted property here.
In any event the principal defendant herein has a good and valid title to the disputed land, as against all the world, by virtue of the prescription of ten years acquerandi causa provided for in Revised Civil Code Articles 3478 and 3479. The evidence is overwhelming that such defendant has been in actual, continuous, peaceable and public possession of the entire tract as owner since prior to 1926; and unquestionably its acquisition of the property from Ray C. Powell on July 23, 1915 was accomplished in good faith and by a legal title translative of ownership.
I respectfully dissent'.
HAWTHORNE, Justice (dissenting).
Plaintiff in this petitory action'seeks t'o be recognized as the owner of a tract of land containing 408 acres in Section 40, Township 14 South, Range 20 East, St. Charles Parish, Louisiana, from which oil is.-being produced. The parties at interest in this litigation are, on the one part, Jacques E. Blevins, plaintiff, and his lessees, Louis J. Roussel and Republic Petroleum Corporation, of which Roussel is president, and, on the other part, defendant Manufacturers Record Publishing Company; its mineral lessee, Humble Oil & Refining Company, and numerous mineral and royalty owners. After trial the lower court dismissed plaintiff’s suit, and the instant appeal was taken.
According to the majority opinion the asserted titles of both plaintiff and defendant find their source in a common vendor, A. T. Dusenbury. On March 9, 1910, Dusenbur.y sold to Albert Phenis, defendant’s author in title, a tract of land in Sections 40 and 39, Township 14 South, Range 20 East, containing 442 acres more or less. The tract of land conveyed was described by metes and bounds. Later two correction deeds were executed by vendors of the property in defendant’s chain of title. By mesne conveyances defendant Manufacturers Record Publishing Company acquired the property in controversy on July 23, 1915, under the same description as that contained in the .correction deeds.
*753 On December 15,1910, about nine months after the sale to Phenis, Dusenbury, the common vendor, sold all of Fractional Sections 38, 39, and 40 to Louisiana Farm Land Company, Ltd.,[1] but the land previously sold to Phenis was expressly excepted from this sale by the following provision in the deed to Louisiana Farm Land Company:
“There is also excepted in Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis, as per private act passed before William Renaudin, Notary Public, and recorded in the Conveyance Records of St. Charles Parish, in Book -, Page -.”
In every subsequent deed conveying Fractional Sections 38, 39, and 40, including the deed to plaintiff, the 440 acres previously sold to Albert Phenis were expressly excluded.
It is abundantly clear from an examination of the various deeds that plaintiff has no record title to the 408 acres here in con^ troversy. In this petitory action he is attempting to have himself declared the owner of these 408 acres by virtue of an expressed exception or exclusion in his own deed.
It is well settled in the jurisprudence of this court that in a petitory action the plaintiff in order to recover must rely on the strength of his own title and not on the weaknéss of his adversary’s. Smith v. Chappell, 177 La. 311, 148 So. 242, and authorities there cited.
By the majority holding plaintiff here is being recognized as owner of the tract in question.under an exception in his deed of acquisition by which that tract was expressly excluded. In other words, plaintiff, who has no record title to the disputed tract, in this petitory action is being recognized as the owner of the land although the land was expressly excepted in his deed and in the deeds of all his authors in title back to the common vendor of both defendant and plaintiff.
The majority opinion states: “* * * the attempted description of the property sought to be conveyed in. the. deed,of March 9, 1910 [the deed to Phenis, defendant’s aüthor in title] and carried as an exception in the deed of December 15, 1910 [the subsequent deed to plaintiff’s author in title] was so fatally defective and without legal meaning so as to render said exception null and void, thereby vesting in appellant’s author in title the ownership of the entire fractional Section 40, Township 14 South, Range 20 East.”
From this statement it is apparent that the majority of the court begins by examining defendant’s title and from this exam- *755 ¡nation concludes that the description found in his deed is fatally defective. In other words, what the majority is saying is that the deed to Phenis to the 400-acre tract in Sections 39 and 40 conveyed nothing. The majority then turns to the deed from Dusenbury by which he conveyed all of these fractional sections and in which it was stated: “There is also excepted from Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis, as per private act * * * ”. From this the majority concludes that the exception was null and void, and that plaintiff’s author in title was therefore vested with the ownership of the entire Fractional Section 40.
If by this process the majority has found an apparently valid title in the plaintiff so as to put the title of defendant at issue, then the defendant should be permitted to prove by extrinsic evidence what property was actually conveyed to its author in title by the March, 1910, deed. The majority, however, has — erroneously in my opinion— denied defendant this right and allowed plaintiff to establish his title solely on the weakness of the defendant’s title.
It is a well-settled principle of law that “a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed. It is sufficient if the description in the deed or conveyance furnishes a means of identification of the land or by which the property can be located. * * * The maxim is ‘that is certain which can be made certainand the Courts lean against striking down a deed for uncertainty of description of the land conveyed, and a liberal rule of construction will be applied to uphold the conveyance”. 16 Am.Jur. 585-586, Deeds, sec. 262; see 26 C.J.S. Deeds § 30, p. 640; Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Smith v. Chappell, 177 La. 311, 148 So. 242; White v. Ouachita Natural Gas Co., 177 La. 1052, 150 So. 15; Snelling v. Adair, 196 La. 624, 199 So. 782; Hargrove v. Hodge, La.App., 121 So. 224.
In Harrill v. Pitts, 194 La. 123, 193 So. 562, 565, the very case relied on by the majority opinion, this court said:
“Courts are always liberal in construing the description of property in deeds, so as to sustain, rather than defeat, the conveyance. 16 Am. Jurisprudence, 585, 586; 18 C.J. 180, 181.
“The rule that the description in a deed will be sustained whenever the instrument affords any description by which the property can be identified, either through the description in the deed itself or by means of extrinsic, competent evidence, has been frequently approved by this Court.”
In Snelling v. Adair, supra [196 La. 624, 199 So. 787], it was stated:
*757 “It is a well settled rule of law in this state that if a portion of the description of property in a deed is either erroneous or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence * *
I concede, as I must, that the defendant’s deeds contain an inaccurate or faulty description of the property, but this description is not so inaccurate or faulty as to be actually misleading. Under these circumstances extrinsic evidence to identify the property should be permitted. If a description is so misleading that it actually describes some property other than that sold, such extrinsic evidence is not admissible, for in such a case this evidence would not make the description certain but would actually change the record. See White v. Ouachita Natural Gas Co., supra. In the instant case, however, the description in defendant’s deed is not so misleading that it actually describes accurately some other property.
This record shows that neither plaintiff nor any vendor in his chain of title, nor any third party, has actually had adverse physical possession of any portion of the property acquired by defendant. Moreover, defendant and its predecessors in title were recognized as owners by everyone who dealt with the property, and even by plaintiff himself, who in the year 1939 attempted by letters to purchase from this defendant a royalty under the tract. In fact, defendant’s title remained unchallenged from 1910, the date of the Dusenbury sale, until some time in 1940, when plaintiff entered into a contract with a former property owner in the area to reacquire for that former owner, by suits if necessary, large tracts of land in the area. Although plaintiff’s authors in title sold timber and granted trapping and mineral leases in Sections 39 and 40, and the rights granted under these contracts were exercised, there is no showing that any of these vendees or lessees exercised or sought to exercise their rights over any portion of the 400-acre Albert Phenis tract. Evidently they knew the location on the ground of this tract.
On the other hand, from 1910, the date of the Dusenbury sale, until the date of the trial defendant and its authors in title have been assessed with, and have paid, the taxes on the disputed property. For many years defendant and its predecessors have been in actual physical possession of the tract sold to Phenis containing 1,000 acres, of which the tract here in dispute forms a part.[2] In 1916 the then record owner evict *759 ed a tenant from a small area of. this, property for failure to pay 'rent. In 1923 and 1924 defendant sold the timber on the tract and caused a survey to be made, and the timber sold was cut and removed from the tract Defendant also granted trapping leases under which its lessees have trapped over the land from 1934 to the present time.
In 1938 it leased the property to the defendant Humble Oil & Refining Company, and this lessee caused a survey to be made by which the property was located on the ground. This lessee dug a canal on the property sufficiently large to accommodate a barge drilling rig, and conducted dredging operations on the property. Numerous wells were drilled on the property by Humble, and during its drilling activities camps were constructed comprising residences, garages, boathouses, offices, tool platforms, etc. Numerous drilling rigs were erected which operated around the clock. Tank batteries and pipelines were constructed on the property. In the course of these activities Humble actually drilled on the tract 11 producing oil wells. This lessee’s activities on the property were still in progress at the time the case was tried in the court below.
A. T. Dusenbury, who sold the tract in question to Albert Phenis, defendant’s author in title, in 1910, testified in this case on behalf of defendant and explained the facts and circumstances surrounding the making of his deed to Phenis. It is beyond question that as between these two the identity and location of the property were well known. • In a conference between Phenis and Dusenbury it was decided what property was to be conveyed and just where the 442 acres were to be located in Sections 39 and 40, and the map used by Dusenbury in preparing the deed was actually filed of record in the instant case. Phenis or his successors in title went into actual physical possession of the 442 acres in Sections 39 and 40. This evidence establishes conclusively what property Dusenbury intended to convey to Phenis, and what Phenis intended to acquire.
That the property intended to be conveyed could be definitely located on the ground is established by the fact that in the instant case Dusenbury, himself a surveyor, located and identified it on the ground by actual survey. The record also shows that other engineers and surveyors identified and located on the ground the land which Dusenbury intended to describe and convey.
I can reach no other conclusion than that the description in the deed, with the aid of extrinsic evidence, is sufficient to establish what property Dusenbury intended to convey to Phenis. Moreover, I think the description in the deed furnishes a means of identification by which the property conveyed can be located with the aid of extrinsic evidence.
*761 The trial judge was of the same view, for in his reasons for judgment he stated:
“The Court, accordingly, finds as a fact that defendant, Manufacturers Record, possessed the disputed property as owner by evicting Adam Sumler in 1916, by inspection and survey through its agent, A. T. Dusenbury in 1923, by the sale of timber to and the cutting of timber by its vendee, Iona Tie and Timber Company, in 1929-30-31, by the trapping activities of its lessee, Felix Dufrene, from 1934 to the present time and by mineral exploration and development of its lessee, Humble, from 1938 to date. All of these facts constituted possession which was ‘continuous and uninterrupted, peaceable, public and unequivocal,’ ' as provided in Article 3487 of the Civil Code, and the Court finds as a fact that defendants did exercise possession of this nature during the times covered by the testimony.
“From a careful hearing of the expert testimony and observation of the witnesses on direct and cross-examination, the Court concludes that the evidence in favor of the sufficiency of the descriptions by use of competent evidence is clear and convincing. In addition, the Court finds it difficult, if not impossible, to reconcile the inability of plaintiff’s expert witnesses to locate the disputed property with the total absence of any testimony that any one of the numerous persons shown by the record as having dealt with the property in question experienced any difficulty whatever in locating the 440-acre Albert Phenis tract. On the contrary, the record is replete with testimony of witnesses who experienced no difficulty whatever in locating and exercising the rights acquired on the Albert Phenis 440-acre tract of land.” (Italics mine.)
The majority in this case relies on the case of Harrill v. Pitts, 194 La. 123, 193 So. 562, and certain pronouncements quoted there from Corpus Juris, American Jurisprudence, and Ruling Case Law.
In the Harrill case plaintiffs argued that a deed was defective “because of the failure to properly describe the property. Their contention is that the description of the property is defective because the deed describes 120 acres by governmental descriptions * * * ending with a reservation of 12 acres therefrom, but does not describe the excepted 12 acres and, therefore, the grantee cannot locate the 108 acres which were intended to be purchased”. This court found that the sale of 108 acres was a valid sale. In the course of that opinion the court stated that if an exception in a deed is not described with certainty, the exception and not the whole deed is void. This statement was dicta in that case, as the court found that the 12 acres excepted were adequately identified and properly described, and in the course *763 of the opinion was careful to point out that “The rights and title of the owner of these twelve acres are not in dispute, in this case”. In the instant case the title to the tract excepted in plaintiff’s deed is in dispute. Moreover, plaintiff here is not contending, as were plaintiffs in the Harrill case, that the deed which contains the exception is null and void in its entirety. Under these circumstances I do not think this case can be accepted as authority for the conclusion reached by the majority in the instant case.
The plaintiff in the case at bar is being allowed to recover a 408-acre tract for which neither he nor any person in his chain of title ever paid one dime. This is made clear by the fact that at the time Truck Farm Land Company, Ltd., joined by Dusenbury sold the land to Louisiana Farm Land Company, Ltd., the conveyance was made at so many dollars per acre, and the purchaser paid only for the actual number of acres called for in his deed. And as we have said, this act as well as all others in plaintiff’s chain expressly excepted the Albert Phenis tract.
The judgment appealed from should be affirmed.

. Tlie lands conveyed were low, swampy lands, commonly known as Louisiana marsh lands. Before exploration for oil, the lands were by their nature suitable only for the trapping of fur-beax-ing animals and the cutting of timber from the l-idges.