54 So.2d 325

**JUNEAU et al. v. LABORDE.**

No. 39926.

June 29, 1951.

Rehearing Denied Oct. 2, 1951.

Earl Edwards, Marksville, for defendant-appellant.

A. J. Roy, Marksville, for defendant-warrantor.

Chester J. Coco, Ben C. Bennett, Jr., Marksville, for plaintiffs-appellees.

HAMITER, Justice.

The five plaintiffs, who are children and heirs of Mrs. Laura Dauzat Juneau, deceased, brought this petitory action on April 12, 1949, to recover an undivided sixty-five one hundred fortieths interest in a tract of land in Avoyelles Parish, containing 65.50 acres, which is in the possession of the defendant, Guidry Laborde. Prior to the death of the said Mrs. Juneau the land belonged to the community of acquets and gains that existed between her and her husband, Trasimond Juneau, who is also plaintiffs' father.

To plaintiffs' petition defendant tendered exceptions of no cause and no right of action and a plea of estoppel. Also he pleaded specially that he "acquired the property forming the basis of this suit on October 12, 1936, from one Joseph L. Escude, by deed recorded in Conveyance Book A–75, at page 481 of the records of the Parish of Avoyel-les; that he acquired from said Escude in good faith, by a deed legal in form and translative of property, and has been in the open, actual and corporeal possession of said property since the date of his acquisition and is, therefore, the owner of the property by prescription acquirendi causa of ten years, as set forth in Article 3478 of the Revised Civil Code of the State of Louisiana."

The district court referred the exceptions and pleas to the merits of the case.

The defendant then answered, denying that plaintiffs own the asserted interest in the property and reiterating and restating, in defense of the action, his special plea of prescription of ten years acquirendi causa. Further, defendant called in warranty Joseph L. Escude from whom he purchased the property under a warranty deed.

The warrantor also filed an answer in which he adopted the exceptions, pleas and other defenses set up by the defendant.

After a trial of the merits the district court rendered a decree (supported by written reasons) which reads as follows: "Let there be judgment, therefore, in favor of the plaintiffs and against the defendant, decreeing them to be the owners of this property in indivision with the defendant in the proportion of each a thirteen one hundred fortieth ($^{13}/_{140}$) interest, and let the defendant, Guidry Laborde, do have judgment against Joseph L. Escude, who was called in warranty by him, for the value of the undivided one-half interest in

said property sold by him to the defendant, together with one-half of the value of the improvements placed by him, and as prayed for by him in his petition, since the defendant is the owner of the other half in view of the sale of said property to him by Escude whose title is unquestioned, together with all costs incurred in this suit."

From the judgment both the defendant and the warrantor are appealing.

Of the several defenses pleaded in bar of the action, appellants rely primarily on the acquisitive prescription of ten years (which we shall consider first), they grounding it on defendant's purchase of the property from the warrantor and invoking the provisions of Civil Code, Articles 3478 and 3479 which read as follows:

Art. 3478:—"He who acquires an immovable in good faith and by just title prescribes for it in ten years. * * *"

Art. 3479:—"To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:

"1. Good faith on the part of the possessor.

"2. A title which shall be legal, and sufficient to transfer the property.

"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.

"4. And finally an object which may be acquired by prescription."

The record discloses that plaintiffs' father, Trasimond Juneau, purchased the tract of land from Cleophas Tassin on October 23, 1922, by making a small cash payment and giving seventeen annual mortgage notes, some of which were for $100 each and the others for $105 each. He was then married to Laura Dauzat, and the property (on which they established their home) became an asset of the community that existed between them. In 1928, while still residing there, Laura Dauzat Juneau died intestate. In addition to her said husband she was survived by seven children, and these children inherited her community one-half interest. Each child, in other words, was vested with an undivided one-fourteenth or ten one hundred fortieths interest in the tract.

Some years later two of the children (sons) died intestate without descendants and three-fourths of their combined twenty one hundred fortieths interest was then inherited by the surviving brothers and sisters, who are the present five plaintiffs, and the other one-fourth by their father. See Civil Code, Article 911. This brought plaintiffs' aggregate interest to sixty-five one hundred fortieths being that claimed herein.

Meanwhile, Cleophas Tassin died, he having been the vendor of plaintiffs' father and the original holder of the latter's mortgage notes; and in an inventory taken in his succession proceedings on July 16, 1926, all of the then unpaid notes (fourteen) were appraised for $250. These notes were later

acquired by Joseph L. Escude, the warrantor herein.

In 1930, or two years after his wife's death, Trasimond Juneau (along with his children) removed from the land; and during the following year he rented it to one Octave Lachney.

Discouraged over the loss of his wife and having concluded that he would be unable to pay his mortgage notes, Trasimond Juneau in 1932 sought out Joseph L. Escude (who held such notes) and offered to transfer the property in settlement of his indebtedness. Escude refused the offer at first, suggesting that Juneau try to sell the land to some one else. Some days later he decided to accept it; and he instructed his brother, a notary public, to prepare a deed for effecting the transfer. The deed, as prepared, recited that Trasimond Juneau, husband of Laura Dauzat, had sold and conveyed the property unto Joseph L. Escude, with warranty of title, for the consideration of $250 cash; and it was signed by the vendor and vendee under date of August 9, 1932. Juneau's children did not join in its execution.

For several years thereafter such vendee held possession of the land through various tenants.

On October 12, 1936, Joseph L. Escude executed a warranty deed in favor of Guidry Laborde, the defendant herein. According to the instrument's recitals the land was conveyed for and in consideration of the price of $1200, of which $75 was paid in cash and the balance was represented by the vendee's fifteen mortgage notes of $75 each, payable one on the first day of October of each of the years 1937 to 1951, both inclusive, and bearing interest from maturity. The deed also stated that the vendor reserved the mineral rights for a period of ten years.

The defendant took actual possession of the land about January 1, 1937, and he has continuously maintained it since by residing thereon and making numerous improvements.

From the foregoing it clearly appears that there have been met at least three of the four conditions announced in Civil Code, Article 3479 for defendant's acquiring by the prescription of ten years the undivided interest inherited by plaintiffs from their deceased mother and brothers. Thus, (1) the object is of the kind which may be so acquired; (2) the deed from Escude, on which defendant's special plea of prescription herein is grounded, is translative of the entire tract; and (3) defendant possessed actually and uninterruptedly for a period of more than ten years prior to the filing of this suit. To be determined, however, is the question of whether the fourth requirement—good faith on the part of the defendant—has also been satisfied.

"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." Civil Code, Article 3481.

"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another." Civil Code, Article 3451.

"He is bona fide possessor who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of. He ceases to be a bona fide possessor from the moment these defects are made known to him, or are declared to him by a suit instituted for the recovery of the thing by the owner." Civil Code, Article 503.

Indisputably, the defendant was well acquainted with the Juneau family, he having lived in the same community and in close proximity to their home for many years, and in 1934 having married a niece of Mrs. Juneau. Further, he admits that he knew that Mrs. Juneau died in 1928, survived by children, his testimony in this respect being:

"Q. Guidry, you said that you knew Trasimond Juneau and his wife and children? A. Yes.

"Q. You used to go play there? A. Yes.

"Q. You said that you knew that Mrs. Trasimond Juneau had died in 1928? A. Yes.

"Q. When you bought this place from Mr. Joe Escude you knew that it was the same place that you used to go play with Trasimond's children? A. Yes, but I didn't know nothing about Mr. Joe and Mr. Trasimond's business.

"Q. But you knew that his wife had died and left children? A. Yes.

"Q. And you knew that at that time it belonged to Trasimond Juneau and that was where you used to go visit? A. Yes.

"Q. And the place you are living on and the place you used to visit is the same place is it not? A. Yes, it's the same place all right."

Prior to his purchasing the property in 1936, the defendant, along with his brother-in-law Dewey Dauzat, drove (according to the testimony of both) to Mansura to see Joseph L. Escude about renting it. The latter suggested a sale, rather than a lease, and proposed a long-term credit transaction without the payment of interest.

Dewey Dauzat testified that during this trip, after leaving Escude's office, he warned defendant against buying the property, stating that the title was not good. Defendant denied having received this warning. In resolving this conflict in the evidence, respecting a very material point, the trial judge in his written reasons observed and concluded: " * * * Dewey Dauzat is positive that on the occasion of his visit to Mansura, in company with defendant, to see Mr. Escude, the matter of the purchase of this place came up and that he informed Guidry Laborde that the titles, as he says: 'were no good' and that

he, Dewey Dauzat, had refrained from buying it because of these defects and consequently he knew Joseph L. Escude could not give good title thereto. It was never shown whether or not Dewey Dauzat had any interest or motive in testifying to such facts. While it is true he admitted they were not on friendly terms, yet the Court knows, and has known both Dewey Dauzat and Guidry Laborde for over twenty-five years, and had dealings with both in a friendly and business-like way, and the Court has always been very much impressed with the character, truthfulness and veracity of Dewey Dauzat. He is a hard working, honest and reliable man; and knowing him as I do, I cannot believe he has deliberately stretched his imagination to such an extent as to swear falsely in this case when he says he informed the defendant of the defects to the title to his property. As between the two, I am constrained to give more weight and credence to the testimony of Dewey Dauzat. * * *"

With the trial judge's finding of fact that Dewey Dauzat warned defendant about the defective title we cannot disagree, especially since he is well acquainted with both of those persons and we are not.

Some fifteen days after making the mentioned trip, the defendant returned to Mansura and, accepting Escude's offer, purchased the property. In support of his asserted belief that a good title was being obtained he testified:

"Q. You married to a first cousin of Trasimond Juneau? A. Yes.

"Q. It seems to me that being married with one of the family that you should have known or that it would have come to your attention that the title wasn't good? A. Nobody ever told me that it wasn't good. I didn't know anything about the business Mr. Joe and Trasimond had, whether Mr. Joe had foreclosed or not.

"Q. But you just suppose that, don't you? A. Yes, and Mr. Joe gave me a guarantee that it was good.

"Q. But you supposed that since Mr. Joe was a business man and well fixed financially that he could give you a good title? A. Yes."

However, it being true that defendant was informed (contrary to his testimony) by Dewey Dauzat of the defectiveness of the title, and further in view of his close acquaintanceship and friendship with the Juneau family and of the fact that he knew positively of Mrs. Juneau's death in 1928, it cannot be held that he had just reason to believe that he was acquiring a title free of defects. With the information that he possessed, which was certainly sufficient to excite inquiry, a duty devolved upon him to investigate the title before purchasing. If he had made the investigation, actual knowledge of the outstanding interest would have been acquired. Having failed in that duty, he is in law chargeable with the knowledge. National Park Bank v. Concordia Land & Timber Co., 159 La. 86,

105 So. 234; Tyson v. Spearman, 190 La. 871, 183 So. 201; Harrill v. Pitts, 194 La. 123, 193 So. 562; Blunson v. Knighton, La. App., 140 So. 302; Dinwiddie v. Cox, La. App., 9 So.2d 68.

Chargeable with such knowledge, defendant was not a possessor in good faith; and he took the deed at his own risk, subject to the claim of plaintiffs. Victoria Lumber Co., Ltd. v. Dawson, 159 La. 848; 106 So. 327.

Defendant contends additionally that even if he was a bad faith purchaser, his vendor, Escude, acquired from Juneau in good faith; and that Escude's good faith possession, with respect to prescription, continued into him and for his benefit, pursuant to Civil Code, Article 3482. It is doubtful that defendant is entitled to offer this contention here inasmuch as it was not passed upon by the trial court and, further, the prescription specially pleaded by him is predicated solely on his deed from Escude. Nevertheless, we find as a fact that Escude also was not a good faith purchaser. Both Juneau and Dewey Dauzat testified that they conversed with Escude about the death of Juneau's wife and the defectiveness of the title prior to his obtaining a deed to the property. Escude, of course, denied this; but his testimony is evasive and contains numerous contradictions. The trial judge gave little weight to it, commenting as follows: "Mr. Escude's testimony is not so impressive to the Court and, to be frank, his testimony is rather contradictory. He was unable to account as to what disposition, if any, was made of the mortgage notes except to say they were probably lost in an old box in his former home. His testimony further bears out the fact the mortgage was cancelled ten years thereafter and then by means of an affidavit. He is not definite about any specific part of his testimony and was rather evasive in answering matters very pertinent to this case."

Furthermore, Escude claims that he gave Juneau $250 for making the transfer in order to save the cost of foreclosing on the mortgage notes. Now why the thought of a foreclosure, since Juneau had offered to execute the conveyance in satisfaction of the indebtedness alone, unless it was that Escude knew of Mrs. Juneau's death and had in mind such method for divesting the interest of the children in the property?

Defendant's plea of estoppel, re-urged here, is also without merit. Plaintiffs did nothing to mislead defendant to his prejudice. And it is well established that mere silence and delay cannot cause a loss of title to property except by effect of the laws of prescription. Pearce v. Ford, 124 La. 851, 50 So. 771; Long v. Chailan, 187 La. 507, 175 So. 42.

Neither can defendant's exceptions of no right and no cause of action be sustained. Plaintiffs' allegations amply and accurately describe their claim as heirs of their deceased mother and brothers, all of.

which were later supported by competent proof.

The judgment of the district court properly decrees plaintiffs to be the owners of undivided interests in the property in the proportions of thirteen one hundred fortieths to each. But it fails to determine an issue among all of the parties respecting the improvements placed on the land by the defendant, and also it does not satisfactorily adjudicate on the extent of warrantor's liability to defendant. We are unable to make a determination of these several disputes, because of the insufficiency of the evidence in the record, and for that purpose the case will have to be remanded to the district court for further proceedings.

For the reasons assigned the judgment is affirmed insofar as it decrees each of the plaintiffs to be the owner of an undivided thirteen one hundred fortieths interest in and to the following described property situated in Avoyelles Parish: A certain tract or parcel of land containing 65.50 acres, more or less, bounded on the north by property of the Succession of Louis Bonnette and R. Lee Laborde, on the south and east by property of Abellus Dauzat, and on the west by property of Mrs. Scott Williams; being the same tract acquired by Trasimond Juneau from Cleophas Tassin under deed dated October 23, 1922, and recorded November 3, 1922, in Book A–28, page 80 of the Conveyance Records of Avoyelles Parish. In all other respects the judgment is set aside and the case is remanded to the district court for further proceedings according to law and consistent with the views herein expressed. All costs shall be paid by warrantor, Joseph L. Escude.