93 So.2d 285 (1957)
Willie LA FLEUR et al.
v.
Alida Stagg FONTENOT et al.
No. 4322.
Court of Appeal of Louisiana, First Circuit.
February 4, 1957.
Rehearing Denied March 25, 1957.
*286 H. Garland Pavy, Robt. F. DeJean, Opelousas, for appellants.
A. Veazie Pavy, Opelousas, J. W. Pucheu, Ville Platte, Jacque B. Pucheu, Eunice, for appellees.
ELLIS, Judge.
This is a petitory action in which the plaintiffs, as the children and grandchildren of Jessey LaFleur and Augustine Collins, are claiming a one-half interest in a 44 arpent tract of land in St. Landry Parish, Louisiana. The defendants as the children and/or grandchildren of Alfred Fontenot filed a plea of ten years good faith acquisitive prescription based upon the acquisition of the property in question by Alfred Fontenot in 1933 from Jessey LaFleur. The plea of prescription was tried and sustained by the District Court and the plaintiff-appellants have appealed.
It is only necessary to decide in this case whether the requisites of the acquisitive prescription of ten years as outlined in Article 3479 of our LSA-Civil Code have been complied with as revealed by the facts in the case. This Article states:
"To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
"1. Good faith on the part of the possessor.
"2. A title which shall be legal, and sufficient to transfer the property.
"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"4. And finally an object which may be acquired by prescription."
The only requisite at issue in this case is No. 1. "Good faith on the part of the possessor." It is necessary that the facts be discussed in detail in order to arrive at a conclusion.
The record discloses that Jessey LaFleur and Gustin Collins were married on the 3rd day of November, 1868 and seven children, four girls and three boys, were born of this marriage. On the date of the trial, May 11, 1956, Emily, the oldest, was approximately 84 or 85 years of age, which it is shown would have been approximately the age of Alfred Fontenot, and the youngest child would have been approximately 69 years of age.
Jessey LaFleur farmed the land in question and raised his family there and traded at the store of Alfred Fontenot, some two or three miles from the property. Jessey LaFleur, as well as his wife, during her lifetime and the children, visited the store of Alfred Fontenot, and at times were waited upon by him personally.
The marriage of Jessey LaFleur and Gustine Collins is not seriously disputed other than the defendants call attention to the fact that the priest of Opelousas, La., who married them has given the name of Jessey LaFleur as Jeofe LaFleur. Apparently this certificate was signed in the *287 same manner, however, when Jessey LaFleur signed the deed to Alfred Fontenot he made his mark. The original was not introduced. The license was issued in the name of Jessey LaFleur and Gustine Collins and the bond was given in the name of Jessey LaFleur and signed by him by mark. It is apparent that if the certificate referred to is correct that it refers to Jessey LaFleur.
The property in question was acquired by Jessey LaFleur on the 21st of November 1884 at which time his wife was living and residing with him as the youngest child was born approximately three years later. There is not a scintilla of evidence that anyone ever thought that Jessey LaFleur and Gustine Collins were not man and wife. They were recognized as such generally in the community.
The plaintiffs-appellants are Negroes while the defendants are white people. Mr. Alfred Fontenot ran a general store in the community and did a credit business whereby he advanced the farmers from year to year, and Jessey LaFleur was one of his long-time customers. Although the defendants objected to the introduction of direct evidence to show that the consideration stated in the act of sale of $453.92 from Jessey LaFleur to Alfred Fontenot was, in fact, for the payment of his past due account, the conclusion is inescapable that such is a fact.
There is no question but that Alfred Fontenot knew the entire LaFleur family well and he is described as an enterprising, smart business man who acquired quite a bit of land during his business career. Knowing the LaFleur family as he did and from the facts in the record, he had knowledge of the approximate time the property was purchased by Jessey LaFleur, which was some 29 years prior to the deed of his acquisition from Jessey LaFleur. It is also shown from the record that Mr. Fontenot knew Jessey LaFleur's wife personally, as she came in the store and that he knew that she died subsequent to the purchase of the property by Jessey LaFleur and prior to his own acquisition in 1933, leaving her husband, Jessey LaFleur, and forced heirs.
The deed executed on the 12th day of June 1933 by Jessey LaFleur to Alfred Fontenot states:
"* * * Jessey LaFleur, a colored man, whose wife before death was Auguste Collins, and who is a resident of the Grand Prairie section of the Parish of St. Landry, State of Louisiana, and the said Jessey LaFleur has not remarried * * * Alfred B. Fontenot * * * here present, accepting for himself heirs and assigns, and acknowledging delivery and possession thereof, the following described property to-wit:
"A certain tract of land with all the buildings and improvements thereon situated in the Grand Prairie Section of the Parish of St. Landry, State of Louisiana containing Forty Arpents (40) more or less and being bounded as follows, to-wit: on the North by lands of Alex Comeau and others, South by lands of L. A. Joubert and Louis Vanright, East by lands of L. A. Joubert, West by lands of Louis Vanright. This being the same property acquired by Jessey LaFleur from Jean Pierre L. Fontenot as per act passed before M. Roberi, Notary Public, on the 21st day of November, in the year 1884." (Emphasis added.)
The only fact missing in order to make a perfect case for the plaintiffs' recovery is proof that Alfred Fontenot actually had personal knowledge of the issuance of the marriage license and the celebration of the marriage between Jessey LaFleur and Gustine Collins. The defendants argue, and correctly so, that good faith is presumed and that the plaintiffs in this case are obliged to prove bad faith on the part of Alfred Fontenot, LSA-Civil Code, Article 3481, and they further contend that *288 under the case of Johnson v. Sugar, 163 La. 785, 112 So. 721, 722, the statement that "Lucy Ann Bradley was the surviving widow of Carrol Bradley, deceased," was not "sufficient in law to impute to Sugar knowledge of want of ownership in the seller and to put him in legal bad faith." The facts in that case are different from those in the case at bar. Knowledge of only the fact that the seller was a widower or that his wife was deceased is quite different from knowledge of that fact in addition to personal acquaintance and knowledge as disclosed by the facts in this record.
Defendants also cite the case of Nethery v. Louisiana Central Lumber Co, 175 La. 753, 144 So. 486, 487. The facts in that case are inapposite in that the representative of the defendant company was "a newcomer in Louisiana and was not acquainted with the people of the parish," and while he knew that the seller had grown children, she and her son represented that the land was the personal property of the mother. A lawyer was employed to prepare and furnish an abstract of title covering the property which disclosed that the property stood upon the public records in the name of the seller and "No intimation was given Mr. Slagle by any one that the children of Mrs. Nethery had any interest in the land."
This fact is entirely different from the case at bar for Mr. Alfred Fontenot upon the death of his wife acquired the interest of his children in the community property inherited by them. He was, therefore, well acquainted with the community property law. Further, in the cited case the attorney who prepared the abstract advised the representative of the defendant company that the title was valid.
Defendants also rely upon Scott v. Dickson, 148 La. 967, 88 So. 235. That case is also inapposite due to the difference in facts. In that case the Court stated:
"* * * The evidence shows that defendant was aware, when she acquired the mortgage note, that plaintiffs' mother had died leaving minor children; but it also appears that defendant did not know that the mortgaged property belonged to the marital community theretofore existing between plaintiffs' father and mother. On the contrary, defendant had been informed and believed that the property had been acquired by plaintiffs' father by inheritance from his father. Under these circumstances, there is no reason to doubt that the defendant was in good faith when she acquired the mortgage on the property and when she bought it at the sheriff's sale."
Defendant in supplemental brief also argue that the contention of plaintiffs that "because the sale wherein Fred Fontenot purchased from Jessey LaFleur stated that the property sold was the same property acquired by Jessey LaFleur from Jean P. Fontenot on November 21, 1884, that this was sufficient to place Mr. Fontenot on notice that the property was community property and thereby place Fred Fontenot in bad faith." In the cases of Fletcher v. Cavelier, 4 La. 267 and Morand's Heirs v. Mayor, etc., of New Orleans, 5 La. 226, 242, the Court held that such a recital in a sale is not such notice of a title defect as to destroy the presumption of good faith. The Court also stated that the means indicated of obtaining knowledge of facts is not equivalent to actual knowledge.
As previously commented upon, knowledge of one fact alone would not be sufficient but in the present case Alfred Fontenot knew the LaFleurs, owned land adjoining the property in question, knew that they were recognized throughout the community as man and wife, knew that they had raised a large family, knew that Jessey LaFleur and his wife lived together on the property for many years until her death, was personally acquainted with Jessey LaFleur, his wife and family, and in addition, approximately one year after the transfer of the property to him by Jessey LaFleur he attempted *289 to purchase the interest of the children, so that the cases relied upon by the defendants are not controlling.
The law applicable in this case has been reviewed thoroughly in the case of Dinwiddie v. Cox, La.App., 9 So.2d 68, 71 as well as a citation and discussion of the jurisprudence, and we take the liberty of quoting rather fully from this case as follows:
"Under the title `Of the Prescription of Ten Years' appears Article 3479 of the [LSA] Civil Code, which reads as follows:
"`To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
"`1. Good faith on the part of the possessor.
"`2. A title which shall be legal, and sufficient to transfer the property.
"`3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"`4. And finally an object which may be acquired by prescription.'
"The last three of these essential prerequisites are present in Mr. Nance's case, but the first one is absent. It is indispensable that all four coexist in order to form the basis of the prescription of ten years acquirendi causa.
"Article 3451 of the [LSA] Civil Code defines the good faith possessor to be: "* * * he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.'
"Article 3452 defines the bad faith possessor. It reads: `The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.'
"The third paragraph of Article 1846 of the [LSA] Civil Code reads as follows: `Error of law can never be alleged as a means of acquiring, though it may be invoked as the means of preventing loss or of recovering what has been given or paid under such error. The error, under which a possessor may be as to the legality of his title, shall not give him a right to prescribe under it.'
"For over one hundred years the courts of this state when construing the Articles of the Civil Code relative to good faith possessors have accorded to this paragraph the influence it was designed to have. It has uniformly been held that regardless of the moral good faith of the purchaser, if he purchased and possessed under error of law, he thereby became a possessor in bad faith and prescription was not available to him. It is not sufficient always to characterize a possessor as being in good faith simply because he thinks or believes he is acquiring good title.
"It is true, as contended, no one is required to examine the public records to determine the validity of title to real property he contemplates purchasing as a condition precedent to good faith. He may purchase without any investigation of the title and if the four named essentials exist, he is protected by the prescription of ten years. But if he is not satisfied with the title offered by the seller and institutes an investigation into its validity, from which facts and conditions are revealed which should put a reasonably prudent person on inquiry, it then *290 devolves upon him to pursue every lead and ferret out all of the facts to the end that he may not purchase until he has complete information before him. If he does not do this, but purchases upon erroneous assumptions and conclusions, he does so at his own risk and peril.
"Mr. Nance made a good beginning in his inquiry into the family history of Lucinda Thomas' heirs, but he quit too soon. He overlooked the fact that although the original heirs, save Will, were dead they might have left descendents who would stand, as regards the land, in the shoes of their father or mother.
"In National Park Bank v. Concordia Land and Timber Company, 159 La. 86, 100, 105 So. 234, 239, it is said: `"Notice of facts which ought to excite inquiry, and which, if purchased, would lead to knowledge of other facts operates as notice thereof."'
"This principle was adopted in Harrill v. Pitts, 194 La. 123, 142, 193 So. 562, as being applicable to persons who contemplate the purchase of land and who fail to thoroughly investigate the title facts and history after acquiring knowledge thereof sufficient to put him on inquiry.
"It was held by this court in Blunson v. Knighton, La.App., 140 So. 302, 307: `"One is not a possessor in good faith who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts and yet acted at his peril."'
"This pronouncement is expressly affirmed by the Supreme Court in Harrill v. Pitts, supra.
"Tyson v. Spearman, 190 La. 871, 183 So. 201, was a petitory action. Concerning the notice herein discussed, the court, with emphasis and approval, quoted the rule laid down in 20 R.C.L., page 346, § 7, which is as follows: `Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts.'
"In the eyes of the law, Nance, after learning that Lucinda Thomas had other children besides Will, for his own protection, at least, should have more thoroughly investigated the facts and family history, and failing to do so, he is held to have known that which such investigation would have revealed. It is said in Breaux-Renoudet Cypress-Lumber Company v. Shadel, 52 La.Ann. 2094, 28 So. 292: `He who is thus put in inquiry, and does not avail himself of the means and facilities at hand to inform himself of the true facts, can claim no greater consideration than can they who knew the true facts, and yet acted to their peril.'
"The facts of Laroux v. Myers, La. App., 144 So. 117, decided by this court, are similar to those of the present case. As disclosed from the syllabus, it was therein held: `As regards ten years' prescription, collateral relative who, knowing deceased left neither ascendants nor descendants, purchased from widow deceased's property acquired before marriage held not good faith possessor ([LSA] Civ.Code, art. 1846, subd. 3).'
"Paragraph one of the syllabus in Knight v. Berwiek Lumber Company, 130 La. 233, 57 So. 900, fits the facts of the present case and succinctly *291 declares the law applicable thereto. We here quote it: `Good faith, to support the prescription of 10 years acquirendi causa, is based on the honest and positive belief of the possessor, founded on just reasons, that he is purchasing from the real owner. Doubt as to the title of the vendor or as to his right to alienate is fatal to a claim of good faith. A doubt sufficient to induce the possessor to make an investigation of the title of his vendor is presumed to have continued down to the sale, in the absence of evidence tending to show its removal by adequate information derived from the records or other trustworthy sources.' * * *
"The case of Roberson v. Reed, La. App., 190 So. 153, decided by this court recently, is analogous. There the defendant purchased from one heir, believing him to be the sole heir of his father, whereas there were children of a pre-deceased child as in the present case. The purchaser honestly believed he was acquiring all of the interest of the deceased father and grandfather. He had knowledge of the family history and was held to be in legal bad faith."
Thus we see it is well settled that if Alfred Fontenot was suffering from an error or law rather than of fact as to the legality of his title he could not prescribe under it. Also applying the well-settled law that notice of facts which ought to excite inquiry and which if pursued would lead to knowledge of other facts operates as notice thereof, and where one who has sufficient knowledge of the facts to put him on inquiry and fails to inquire, or one who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts is chargeable with all the facts which by a proper inquiry he might have ascertained.
Counsel for defendants argues that the Dinwiddie case, supra, and cases therein cited are not apposite for there is no testimony that Fontenot doubted his title. It is not a question of whether Fontenot doubted his title in the present case but whether he should have doubted his title from the facts and conditions and information of which he had actual knowledge as shown by the record, and it must be answered in the affirmative. In the Dinwiddie case it is true that the court said if one is not satisfied with the title offered by the seller and institutes an investigation into its validity from which facts and conditions are revealed which should put a reasonably prudent person on inquiry, it then devolves upon him to pursue every lead and ferret out all the facts to the end that he may not purchase until he has complete information before him, and if he does not do this but purchases upon erroneous assumptions and conclusions, he does so at his own risk and peril, yet, the case at bar is even stronger, as it was not necessary for Fontenot to be dissatisfied with his title and institute an investigation for he was in full possession of the facts and conditions which should have put him not only on inquiry but was sufficient knowledge for any reasonably prudent man to assume that the property was community property and that these plaintiffs were the owners of their mother's half. If he doubted the plaintiffs' ownership it could only have been because he did not think or did not actually know that a legal marriage existed between the mother and father. Having a full knowledge of all other facts it was up to Fontenot if he so desired to make inquiry.
In Juneau v. Laborde, 219 La. 921, 54 So.2d 325, 329, the court stated:
"However, it being true that defendant was informed (contrary to his testimony) by Dewey Dauzat of the defectiveness of the title, and further in view of his close acquaintanceship and friendship with the Juneau family and of the fact that he knew positively of Mrs. Juneau's death in 1928, it cannot be held that he had just reason to believe *292 that he was acquiring a title free of defects. With the information that he possessed, which was certainly sufficient to excite inquiry, a duty devolved upon him to investigate the title before purchasing. If he had made the investigation, actual knowledge of the outstanding interest would have been acquired. Having failed in that duty, he is in law chargeable with the knowledge. National Park Bank v. Concordia Land & Timber Co. 159 La. 86, 105 So. 234; Tyson v. Spearman, 190 La. 871, 183 So. 201; Harrill v. Pitts, 194 La. 123, 193 So. 562; Blunson v. Knighton, La.App., 140 So. 302; Dinwiddie v. Cox, La.App., 9 So.2d 68.
"Chargeable with such knowledge, defendant was not a possessor in good faith; and he took the deed at his own risk, subject to the claim of plaintiffs. Victoria Lumber Co., Ltd. v. Dawson, 159 La. 848, 106 So. 327."
It is true that there is no testimony that Fontenot was informed that the title was defective but he was well acquainted with the LaFleur family and had actual knowledge of facts which on their face if accepted as true would legally entitle the plaintiffs to the ownership of an undivided one-half interest in the property, when he took title to the property he was chargeable with such knowledge and was not a possessor in good faith, and, as in the Juneau case, "he took the deed at his own risk, subject to the claim of plaintiffs."
Much is made of the fact that these plaintiffs waited so long to bring their suit. This is understandable as they are Negroes and frankly stated that they did not quite know how to go about it. However, their silence for so many years cannot deprive them of rights accorded them by law under the facts of this case.
After a careful consideration of the record in this case it would appear that Fontenot took title to this property for the debt that Jessey LaFleur owed him, knowing full well that Jessey LaFleur had acquired the property while holding himself out as being married to Gustine Collins and while they were living together as man and wife and raising a family, and with full knowledge of the existence of the forced heirs and of the death of Gustine Collins prior to his acquisition, with the hope that he would acquire the interest of these heirs later as he attempted to do approximately one year after his acquisition.
Under the facts and law, Alfred Fontenot was not in good faith and the plea of ten years prescription is hereby overruled.
The judgment of the district court is hereby reversed and the case remanded to the District Court for trial on the merits, costs to be paid by defendants appellees.
Judgment reversed.