ELLIS, Judge.
This suit began as a jactitory, or slander of title, action brought by Rocco Savoia against four defendants, filed March 18, 1954. In Aprií, 1954 exceptions of vagueness and mis-joinder were filed and in August, 1956 the plaintiff filed a supplemental and amended petition. After hearing the exceptions of vagueness and mis-joinder were overruled. In December of 1956, two of the defendants, Roy R. De-leíte and Mrs. Mable Deleíte Hatton, filed exceptions of want of possession and of no cause or right of action. After hearing, both of these exceptions were overruled, and in January of 1957 the other two defendants denied they were slandering plaintiff’s title. In September of 1957 Roy R. Deleíte and Mrs. Hatton filed an answer and by way of a reconventional demand converted the proceeding into a petitory action against Rocco Savoia. Answer to *114 this proceeding was filed by Savoia in November, 1957 and therein he called Mrs. Beulah Bradford Capello in warranty, which call was answered by this defendant in December of 1957. After trial judgment was rendered in favor of Savoia, plaintiff in the jactitory action and defendant in the petitory action. The two defendants in the petitory action, Roy R. Delette and Mrs. Mable Delette Hatton, have appealed.
Through an act of sale dated November 25, 1914, recorded in COB 58, Folio 462 of the official conveyance records of Ascension Parish, Mrs. Laura Brandford, widow of Paul Rogeau, and Mrs. Beulah Bradford, wife of Lawrence Delette, purchased a certain tract in Ascension Parish. This deed recites Beulah Bradford was the wife of Lawrence Delette, who signed the act with her to aid and authorize her. There was no recitation in this deed nor any indication whatsoever that the property was being purchased with the separate and par-aphernal funds of Mrs. Delette.
In 1923 Lawrence Delette died intestate, leaving as his heirs three children, Roy R. Delette, Mable Delette, now the wife of R. S. Hatton, and Beulah Delette, all issue of his marriage with Beulah Bradford, and all minors at the time.
Beulah Delette died intestate and without issue.
Through an act of sale dated July 9, 1945, of record in COB 83, folio 145, Rocco Savoia purchased the property in question from Mrs. Laura Bradford Rivet and Mrs. Beulah Bradford Delette Capello. This deed recited the vendors were “selling and transferring their separate and paraphernal property acquired by them prior to their marriages to their above named husbands and under their separate administration and control”.
The plaintiffs in the petitory action, Mrs. Mable Delette Hatton and Roy Delette, claim an undivided interest in the property as two of the three children of Lawrence Delette and as heirs to three-fourths of the third child’s interest, Beulah Delette, who died intestate and without issue. They claim the property in question formed a part of the community of acquets and gains between Beulah Bradford Delette, now Capello, and their father, Lawrence Delette, and upon his death his children became the owners of an undivided one-half interest thereof. Further, they inherited an additional interest upon the death of their sister, Beulah Delette.
The first question presented is whether the plea of acquisitive prescription of 10 years is good. If this plea is good it makes no difference whether or not the property in question was community property or was the separate property of Beulah Bradford Delette, now Capello, and its status as to paraphernality need not be considered.
Prescription of Ten Years
The pertinent Articles of our Civil Code are:
“Art. 3474 — Immovables are prescribed for by ten years, when the possessor has been in good faith and held by a just title during that time.”
“Art. 3478 — He who acquires an immovable in good faith and by just title prescribes for it in ten years. * * ”
“Art. 3479 — To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
“1. Good faith on the part of the possessor.
“2. A title which shall be legal, and sufficient to transfer the property.
“3. Possession during the time required by law, which possession must be accompanied by the incidents hereinafter required.
“4. And finally an object which may be acquired by prescription.”
*115 “Art. 3480 — The good faith, spoken of in the preceding article, is defined in the chapter which treats of possession.”
“Art. 3481 — Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor must prove it.”
“Art. 3482 — It is sufficient if the possession has commenced in good faith; and if the possession should afterwards he held in bad faith, that shall not prevent the prescription.”
“Art. 3451 (Chapter 2 — ‘Of Possession’) — The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.”
Plaintiffs in the petitory action contend that Savoia was not in good faith when he purchased the property in question since he had knowledge that Lawrence Delette died leaving 3 children, and his close acquaintance and friendship with the De-lette family negatived any belief that he was acquiring title free of defect; that having such information the duty devolved upon him to investigate the title. Savoia did have a title examination made by an attorney, Sidney A. Marchand. This attorney, after the death of Lawrence De-lette, was employed by Mrs. Beulah Bradford Delette, now Capello, to open the succession and she was appointed natural tu-trix of her minor children. An inventory, taken in the tutorship proceedings, shows no property whatsoever belonging to the minors and the affidavit therein was signed by Mrs. Beulah Bradford Delette, now Ca-pello. Mr. Marchand, after checking the title, passed the act of sale from Mrs. Beulah Bradford Delette Capello and Mrs. Laura Bradford Rivet to Savoia on July 9, 1945. He, Marchand, testified that when he checked the title for Savoia he found the extract of inventory recorded in the mortgage records and also checked the act of sale from the vendor to Mrs. Laura Bradford, now Rivet, and Beulah Bradford Delette, now Capello. Further, that a question arose in his mind as to whether the property was the separate property of Mrs. Lawrence Delette or whether her children had an interest therein, and he then went to both Mrs. Rivet and Mrs. Capello, who assured and convinced him that the property formed part of their separate and paraphernal estates. This assurance was made to him prior to the sale to Savoia and also at the time the act was passed. He stated he then advised Savoia there was no defect in the title. It appears Marchand knew Mrs. Capello had purchased other properties as her separate property and these deeds contained the declaration that the consideration was paid with funds given her by her father. Also, Mrs. Capello granted numerous leases and rights of way upon the property in question, as shown by the record. It was upon this knowledge that Marchand advised Sa-voia the title was good and the sale was then consummated.
Mrs. Beulah Capello testified she had always told Savoia the property in question was hers, that she had leased it to him and that when she sold it to Savoia she sold him the whole property “that there wasn’t any body else to sign it but me and my sister”.
Under Article 3451 of the Civil Code, supra, the good faith required is that the vendee buy “a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.”
The plaintiffs in the petitory action contending that under these facts Savoia was not in good faith, cite the case of Martin v. Schwing Lumber & Shingle Co., 228 La. 175, 81 So.2d 852. In that case a vendee was held to be bound by what the record reveals and cannot claim to have acted in good faith if the record discloses a defect in title where he, the vendee, has *116 instituted an investigation into the validity of his vendor’s title. The title examination made by the vendee’s attorney prior to the purchase of the land disclosed that title to an undivided one-half interest was of record in the name of a third party. Consequently, since the vendee had a title examination made he was bound by the record, which disclosed a defect, and was held not to be in good faith. In the Martin case there was testimony of one of the officers of the corporation that a title examination had been made and this witness remembered some of the transactions but did not recall whether the Company received a title letter from the examining attorney at that time. The Court, in its opinion, concluded it was unquestionable that an examination made by the corporation’s attorneys prior to the purchase disclosed that title to an undivided one-half interest was of record in the name of a third party. We deem this case inapposite since in the present case there was no deed of record showing any interest in any other persons except the vendors of Savoia.
Also cited in Juneau v. Laborde, 219 La. 921, 54 So.2d 325. In the Juneau case the record showed the defendant was specifically warned the title was not good. Also he was well acquainted with the Juneau family, having lived in the same community and in close proximity to their home for many years and finally married a niece of Mrs. Juneau. The Court found the defendant was not a possessor in good faith since he received the specific warning of defective title and was well acquainted with the facts. This case is not authority in the case at bar since Savoia received no specific warning and, to the contrary, was assured by his attorney and both vendors the title was good.
We had occasion in LaFleur v. Fontenot, La.App., 93 So.2d 285 to review the law applicable to cases of this type concerning good faith upon the part of a possessor who pleads the 10 year acquisitive prescription. Therein we quoted extensively from Dinwiddie v. Cox, La.App., 9 So.2d 68, which case discussed our jurisprudence upon this question with full citations. The rule as to good faith was restated by us in the Le-Fleur case, supra [93 So.2d 291], in the language following:
“Thus we see it is well settled that if Alfred Fontenot was suffering from an error or law rather than of fact as to the legality of his title he could not prescribe under it. Also applying the well-settled law that notice of facts which ought to excite inquiry and which if pursued would lead to knowledge of other facts operates as notice thereof, and where one who has sufficient knowledge of the facts to put him on inquiry and fails to inquire, or one who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts is chargeable with all the facts which by a proper inquiry he might have ascertained.
“Counsel for defendants argues that the Dinwiddie case, supra, and cases therein cited are not apposite for there is no testimony that Fontenot doubted his title. It is not a question of whether Fontenot doubted his title in the present case but whether he should have doubted his title from the facts and conditions and information of which he had actual knowledge as shown by the record, and it must be answered in the affirmative. In the Din-widdie case it is true that the court said if one is not satisfied with the title offered by the seller and institutes an investigation into its validity from which facts and conditions are revealed which should put a reasonably prudent person on inquiry, it then devolves upon him to pursue every lead and ferret out all the facts to the end that he may not purchase until he has complete information before him, and if he does not do this but purchases upon erroneous assumptions and conclusions, he does so at his own risk and peril, yet, the case at bar is even stronger, as it was not necessary for Fontenot to be dissatisfied with his title and institute an investigation for he was in full possession of the facts and conditions which should have put him *117 not only on inquiry but was sufficient knowledge for any reasonably prudent man to assume that the property was community property and that these plaintiffs were the owners of their mother’s half. If he •doubted the plaintiffs’ ownership it could only have been because he did not think or did not actually know that a legal marriage existed between the mother and father. Having a full knowledge of all other facts it was up to Fontenot if he so desired to make inquiry.
“In Juneau v. Laborde, 219 La. 921, 54 So.2d 325, 329, the court stated:
“ ‘However, it being true that defendant was informed (contrary to his testimony) by Dewey Dauzat of the defectiveness of the title, and further in view of his close acquaintanceship and friendship with the Juneau family and of the fact that he knew positively of Mrs. Juneau’s death in 1928, it cannot be held that he had just reason to believe that he was acquiring a title free of defects. With the information that he possessed, which was certainly sufficient to excite inquiry, a duty devolved upon him to investigate the title before purchasing. If he had made the investigation, actual knowledge of the outstanding interest would have been acquired. Having failed in that duty, he is in law chargeable with the knowledge. National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234; Tyson v. Spearman, 190 La. 871, 183 So. 201; Harrill v. Pitts, 194 La. 123, 193 So. 562; Blunson v. Knighton, La.App., 140 So. 302; Dinwiddie v. Cox, La.App., 9 So.2d 68.
“ ‘Chargeable with such knowledge, defendant was not a possessor in good faith; and he took the deed at his own risk, subject to the claim of plaintiffs. Victoria Lumber Co., Ltd. v. Dawson, 159 La. 848, 106 So. 327.’
“It is true that there is no testimony that Fontenot was informed that the title was defective but he was well acquainted with the LaFleur family and had actual knowledge of facts which on their face if accepted as true would legally entitle the plaintiffs to the ownership of an undivided one-half interest in the property, when he took title to the property he was chargeable with such knowledge and was not a possessor in good faith, and, as in the Juneau case, ‘he tooke the deed at his own risk, subject to the claim of plaintiffs.’
“Much is made of the fact that these plaintiffs waited so long to bring their suit. This is understandable as they are Negroes and frankly stated that they did not quite know how to go about it. However, their silence for so many years cannot deprive them of rights accorded them by law under the facts of this case.
“After a careful consideration of the record in this case it would appear that Fontenot took title to this property for the debt that Jessey LaFleur owed him, knowing full well that Jessey LaFleur had acquired the property while holding himself out as being married to Gustine Collins and while they were living together as man and wife and raising a family, and with full knowledge of the existence of the forced heirs and of the death of Gus-tine Collins prior to his acquisition, with the hope that he would acquire the interest of these heirs later as he attempted to do approximately one year after his acquisition.
“Under the facts and law, Alfred Fon-tenot was not in good faith and the plea of ten years prescription is hereby overruled.”
Applying this rule to the present case the whole question is whether Savoia was, under the facts and conditions, put upon inquiry as a reasonably prudent person. He employed an attorney and purchased the tract upon his advice the title was good. The two sisters who sold to him had bought the property in 1914 and taken it in their names alone. Mrs. Capello, the mother of the plaintiffs in the petitory action, had purchased other properties as her separate property and the deeds thereto contained the declaration the consideration was paid by her separate funds given her by her father. The attorney was aware of these *118 facts as well as the further fact that in the tutorship proceeding of the minor children of Lawrence Delette there was no mention made that they had any interest in the property in question in this suit. Also, Mrs. Capello had always managed this property as if it were her own and had granted numerous leases thereto, rights of way and other transactions. Further, the Attorney, Mr. Marchand, spoke to Mrs. Capello and she told him as well as Savoia, before the sale and also at the time of the sale, that this was her separate property. It is true Savoia knew Lawrence Delette, father of the plaintiffs, and knew that he was dead at the time he purchased the property. The trial court, in written reasons, stated the testimony of Savoia might seem inconsistent in some respects but that in all fairness to this witness he had had two strokes and a heart attack before giving his testimony. His evidence indicated he had lived away from the Parish of Ascension, the situs of the property, for some 14 years, and the deed by which he acquired the property recites that he was a resident of East Baton Rouge Parish at that time. Too, Mrs. Capello stated that when she sold Savoia the property there was no one else to sign the deed but her and her sister. One of the leases she granted was to Savoia and he had al-, ways been led to believe the property was her separate property. The evidence further discloses Mrs. Capello, at the time the property in question was acquired by her and her sister, had other separate property and was well able to pay the consideration for the tract in question when she purchased it. Upon these facts the trial court held Savoia to be in good faith when he purchased the land.
Article 3481 of the Civil Code states further that “good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor must prove it.”
This record does not show the plaintiffs in the petitory action have overcome this presumption.
The other elements necessary to successfully plead the 10 year prescription are present. There is a deed translative of title, the possession of Savoia for 10 years has been proven, and, as this suit involves land, there is an object which may be acquired by prescription.
For the above and foregoing reasons the judgment of the district court is affirmed.