282 So.2d 845 (1973)
Etienne D. THIBODEAUX and Olive Thibodeaux Comeaux, Plaintiffs-Appellees,
v.
Eddie QUEBODEAUX, Defendant-Appellant.
No. 4226.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1973.
Rehearing Denied September 14, 1973.
*847 Edwards, Stefanski & Barousse, by Homer E. Barousse, Jr., Crowley, for defendant-appellant.
Pugh, Buatt, Landry & Pugh, by Kenneth O. Privat, Crowley, for plaintiffsappellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a petitory action in which plaintiffs, Etienne D. Thibodeaux and Mrs. Olive Thibodeaux Comeaux, seek a judgment recognizing them as owners of an undivided one-third interest (a one-sixth interest each) in a seven acre tract of land in Acadia Parish. The defendant is Eddie Quebodeaux. One of the plaintiffs, Etienne Thibodeaux, died while the suit was pending, and his five surviving children were substituted as party plaintiffs. Judgment on the merits was rendered by the trial court in favor of plaintiffs, and defendant has appealed.
Two issues are presented. One is whether a document which purports to be an act of sale to defendant's author in title was actually a donation in disguise, with the result that the property became a part of the separate estate of the transferee. The other issue is whether defendant has acquired title to the property in dispute by prescription acquirendi causa of 10 or 30 years.
The pertinent facts are that Josephine Moreau married Theobert Thibodeaux in 1915, and of that union two children were born: Etienne Thibodeaux and Mrs. Olive Thibodeaux Comeaux, the original plaintiffs in this suit. Theobert Thibodeaux died in 1928. His widow, Josephine, then married Homer A. Thibodeaux on February 8, 1938, and she had one child, Mrs. Myrtis Thibodeaux Burleigh, issue of her second marriage.
On April 24, 1939, while Homer and Josephine Thibodeaux were married and were living together, Aurelien Thibodeaux (Homer's father) executed a document which purports to be an act of sale conveying to Homer Thibodeaux a 21.84 acre tract of land in Acadia Parish, but reserving to the vendor during his lifetime the usufruct of that property. The deed contained no stipulation of any kind to the effect that the property was being purchased with the separate funds of the vendee, Homer A. Thibodeaux, or that it was to become a part of his separate estate.
Mrs. Josephine Moreau Thibodeaux died intestate on August 20, 1945, being survived by her husband, Homer, and her three children. We have already pointed out that two of her children, the original plaintiffs in this suit, were issue of her first marriage, and that her third child, Mrs. Burleigh, was born of her marriage to Homer. Josephine's succession has never been opened.
On October 8, 1945, about seven weeks after Josephine's death, Homer Thibodeaux executed a deed purporting to convey to defendant, Eddie Quebodeaux, the east seven acres of the 21.84 acre tract which Homer had acquired from his father. The seven acre tract of land purportedly conveyed to the defendant by that deed is the property which is in dispute here.
Homer Thibodeaux died intestate in September, 1959. He, like Josephine, had been married previously, and at his death he also left three children, one of whom was Mrs. Burleigh, the sole issue of his marriage *848 to Josephine. His other two children were issue of his first marriage. All three of his children accepted his succession unconditionally, and judgment was rendered sending them in possession of the property left by him. None of his children are parties to this suit.
Plaintiffs contend that the 21.84 acre tract of land which Homer acquired from Aurelien Thibodeaux on April 24, 1939, became a part of the community which existed between Homer and Josephine. They take the position that when the community was dissolved by Josephine's death in August, 1945, Homer acquired an undivided one-half interest in that property as his part of the community, but that the remaining one-half interest in said property was inherited by Josephine's three children, two of them being the original plaintiffs in this suit. They argue that since Homer owned only an undivided one-half interest in the property on October 8, 1945, the deed which he executed on that date conveyed to defendant Quebodeaux only an undivided one-half interest in that seven acre tract. Plaintiffs also claim that they, as children and grandchildren of Josephine, are entitled to be recognized as such and sent and put in possession of the undivided interests in such property to which they are entitled.
Defendant Quebodeaux contends that Homer Thibodeaux paid no consideration for the 21.84 acre tract which he acquired from his father, and that the conveyance from Aurelien to Homer Thibodeaux, dated April 24, 1939, was intended by the parties to be a donation. He claims that the transfer was made in the form of a deed rather than a donation because Aurelien wanted to reserve the usufruct, and LSA-C.C. art. 1533 prohibits a donor from reserving the usufruct of property affected by the donation. He argues that the document purporting to be an act of sale from Aurelian to Homer Thibodeaux actually was not a sale, but instead was a donation in disguise, and that the property affected by that conveyance thus became a part of Homer's separate estate. He takes the position that it never belonged to the community, that Homer continued to have full ownership of the property after Josephine's death, and that the act of sale executed by Homer Thibodeaux on October 8, 1945, conveyed full title to the seven acre tract to defendant.
Judgment was rendered by the trial court in favor of plaintiffs, recognizing Mrs. Olive Thibodeaux Comeaux as owner of an undivided one-sixth interest in the seven acre tract of land in dispute here, and recognizing the five children of Etienne Thibodeaux, deceased, as owners of an undivided one-thirtieth interest each in said property. Defendant has appealed from that judgment.
At the trial defendant produced evidence which establishes that shortly before April 24, 1939, a large tract of land owned by Aurelien Thibodeaux, in Acadia Parish, was subdivided into 11 lots, each comprising slightly more than 21 acres. Aurelien had 11 children, and on the above mentioned date he executed 11 separate documents, each of which purports to be an act of sale conveying one of the above mentioned lots to one of his children. By means of those sales, all of the lots were transferred, and each child received one of them. In each such sale, the vendor reserved to himself the usufruct during his lifetime of the property conveyed.
Homer was one of Aurelien's eleven children, and one of the deeds executed by Aurelien on April 24, 1939, conveyed to Homer Lot 3 of the above mentioned subdivision. That deed recited that the sale was made for a consideration of $1350.00, of which amount $25.00 was paid in cash, receipt of which was acknowledged, and the remainder was represented by 12 promissory notes executed by the purchaser and made payable to the vendor. Ten of those notes were for $50.00 each, payable on demand, one was for $75.00, also payable on demand, and one was for $750.00, payable on or before one year after date. The *849 record shows that on the face of each of the ten $50.00 notes there appears an inscription reading, "Paid 11/18/39 by check to ...," and the name of a different child of Aurelien Thibodeaux was shown as the payee of each such check, except that no such payment is shown to have been made to Homer. The $75.00 note and the $750.00 note were marked "Paid," but there is no indication on them as to how or when they were satisfied. The mortgage and vendor's lien which secured the payment of the notes was cancelled from the mortgage records as to some of the notes on February 23, 1940, and as to the rest of them on February 29, 1940.
All of the other ten deeds which were executed by Aurelien on April 24, 1939, were identical except for the names of the vendees. Each such document recited that the sale was made for a consideration of $850.00, of which amount $25.00 was paid in cash, receipt of which was acknowledged, and the balance was represented by two promissory notes. One of those notes was for $75.00, payable on demand, and the other was for $750.00, payable on or before one year after date. The record does not show whether the notes have been marked paid, or whether the vendor's lien retained in connection with each such sale has been cancelled.
It is apparent from the above that the deed from Aurelien to Homer Thibodeaux was different from the other deeds, in that it stipulated that a greater consideration was being paid for the property conveyed to Homer, and the price was made payable in a manner different from that specified in all of the other sales.
Defendant Quebodeaux testified that his wife was a child of Aurelien Thibodeaux, and that one of the above mentioned lots was conveyed to her by Aurelien on April 24, 1939. He stated that he did not remember whether he was present when that transaction took place, but that his wife did not pay her father anything for the lot which was sold to her. Edward Thibodeaux, another child of Aurelien, testified that he also acquired one lot from his father, and that he paid nothing for it. He does not know of his own knowledge whether any of the other children paid for the lots which they received.
The trial judge concluded that the notes executed by Homer Thibodeaux in connection with the sale made to him were paid, and that the transfer from Aurelien to Homer, dated April 24, 1939, thus was actually a sale and not a donation. He held that since the deed did not contain declarations to the effect that the property was being purchased with Homer's separate funds and that it was to belong to his separate estate, the property became a part of the community which existed between Homer and Josephine. His ultimate conclusion was that defendant Quebodeaux acquired only a one-half interest in the seven acre tract.
We agree with the conclusions reached by the trial court. The evidence, at best, shows only that defendant's wife and Edward Thibodeaux did not pay for the lots which they acquired from their father. Actually, both of them executed promissory notes representing the purchase price, and the evidence merely shows that they did not pay these notes. In our opinion, such a showing does not establish that any of the deeds executed by Aurelien on April 24, 1939, including the conveyance to defendant's wife and to Edward, were intended to be donations. Even if it reasonably could be inferred from the evidence that the father intended to donate property to some of his children, such an inference cannot be applied to the sale to Homer, because that sale was different from all of the other transfers. The consideration paid for the property which Homer received was greater than that required of any of the other children, and the evidence shows that all of the notes executed by Homer representing most of the purchase price were actually paid.
We hold, as did the trial judge, that the conveyance from Aurelien to Homer, dated April 24, 1939, constituted a *850 sale and not a donation, and that the property affected belonged to the community which existed between Homer and his wife, rather than to Homer's separate estate. Homer owned only an undivided one-half interest in the property on October 8, 1945, therefore, and defendant thus acquired only a one-half interest in the seven acre tract which Homer purportedly sold to him on that date.
At the trial, plaintiffs objected to the introduction of the above mentioned evidence by defendant tending to show that the purchase price recited in the deed to Homer Thibodeaux had not been paid. They argued that the evidence was inadmissible since there were no allegations of fraud or mistake in the pleadings, and the evidence tended to vary or contradict the terms of a written agreement. The trial judge admitted the evidence subject to plaintiffs' objection, and he apparently considered that evidence in deciding the case.
It is unnecessary for us to decide the serious question raised by that objection, because we have determined that the evidence which was produced fails to establish that the deed to Homer was a donation in disguise. The result thus would be the same whether the objection should or should not be sustained. We have based our decision on the evidence because the trial judge elected to do so. We make it clear, however, that we have not considered and we express no opinion whatsoever on the issue of whether the evidence offered by defendant is or is not admissible.
We turn now to defendant's argument that he has acquired title to the property by acquisitive prescription of 10 or 30 years. The trial judge held that he had not, and we agree.
Defendant Quebodeaux has been in open and continuous possession of the seven acre tract in dispute here since the date he purchased it, on October 8, 1945. He has possessed it less than 30 years, and he cannot tack on the possession of his ancestor in title, Homer Thibodeaux, because the possession exercised by the latter was not hostile to plaintiffs claim of ownership. There thus is no merit to defendant's plea of prescription of 30 years.
Defendant claims, however, that he has acquired title by prescription of ten years under LSA-C.C. art. 3479. The trial judge rejected that claim on the ground that Quebodeaux "was not in legal good faith so as to support prescription."
A possessor in good faith is defined in the Civil Code as follows:
"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another." LSA-C.C. art. 3451.
The following is the definition of a possessor in bad faith:
"The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective." LSA-C.C. art. 3452.
Good faith is always presumed in matters of prescription: and he who alleges bad faith in the possessor, must prove it. LSA-C.C. art. 3481.
The evidence shows that defendant married a sister of Homer Thibodeaux. He lived near Homer for many years, and he was well acquainted with the entire Thibodeaux family. He knew that Homer's wife, Josephine, had been married previously, and that the two original plaintiffs in this suit were Josephine's children, issue of her prior marriage. He was aware of the fact that Homer acquired the property which is in dispute here while he was married to Josephine, and that he sold it to defendant after Josephine's death. Quebodeaux conceded that he knew that the law provided that "when a man and a woman are married and they acquire property that half is for the man and half is for the woman." He explained, however, that despite his knowledge of these facts and the *851 circumstance that the conveyance from Aurelien to Homer was made in the form of a deed, he believed that Josephine's children nevertheless acquired no interest in the property at her death because "Mr. Aurelien gave Homer the land," and "His daddy gave it to him."
Our law is settled that regardless of the moral good faith of the purchaser, if he purchased under an error of law, he was thereby in legal bad faith, and prescription of ten years under LSA-C.C. art. 3479 was not available to him. It is not sufficient always to characterize a possessor as being in good faith simply because he thinks or believes he is acquiring good title. Holley v. Lockett, 126 So.2d 814 (La.App. 2 Cir. 1961); Dinwiddie v. Cox, 9 So.2d 68 (La.App. 2 Cir. 1942); LaFleur v. Fontenot, 93 So.2d 285 (La.App. 1 Cir. 1957).
Applicable here also is the rule that notice of facts which ought to excite inquiry and which if pursued would lead to knowledge of other facts operates as notice thereof. Where one who has had sufficient knowledge of the facts to put him on inquiry and fails to inquire, or one who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts, is chargeable with all the facts which by a proper inquiry he might have ascertained. LaFleur v. Fontenot, supra; Malone v. Fowler, 228 So.2d 500 (La.App. 3 Cir. 1969); Boyet v. Perryman, 240 La. 339, 123 So.2d 79 (1960); Juneau v. Laborde, 219 La. 921, 54 So.2d 325 (1951).
In Juneau v. Laborde, supra, where an issue was presented similar to that being considered here, out Supreme Court said:
"Indisputably, the defendant was well acquainted with the Juneau family, he having lived in the same community and in close proximity to their home for many years, and in 1934 having married a niece of Mrs. Juneau. Further, he admits that he knew that Mrs. Juneau died in 1928, survived by children ..."
"With the information that he possessed, which was certainly sufficient to excite inquiry, a duty devolved upon him to investigate the title before purchasing. If he had made the investigation, actual knowledge of the outstanding interest would have been acquired. Having failed in that duty, he is in law chargeable with the knowledge."
"Chargeable with such knowledge, defendant was not a possessor in good faith; and he took the deed at his own risk, subject to the claim of plaintiffs."
Applying the above mentioned rules to the instant suit, we find that defendant Quebodeaux had knowledge of all of the essential facts, that he should have known that his title was defective when he purchased the property, and that his assumption or belief that he acquired a good title was an error of law. We also believe that his knowledge of these facts at least was sufficient to have excited inquiry, and that a duty devolved on him to investigate the title before purchasing the land from Homer. If he had made such an investigation, actual knowlege of the outstanding interests would have been acquired. Having failed in that duty to investigate, he is in law chargeable with knowledge of the defect in the title.
We conclude, as did the district judge, that defendant was in legal bad faith at the time he purchased and went into possession of the property in dispute here, and that he thus has not acquired title by prescription of ten years.
Defendant argues further that plaintiffs are bound by the "warranties and equities" of their ancestor in title, since they have accepted the succession of their mother, Mrs. Josephine Thibodeaux. Josephine, of course, never sold or warranted the title to the property. As we understand defendant's argument, however, he contends that the conveyance from Aurelien to Homer was a donation in disguise, and that the property thus should have belonged to the separate estate of Homer, but *852 that because of a technicality (the fact that the conveyance was made in the form of a sale) the community became the owner of that property. He argues that the community was unjustly enriched, that the community thus is indebted to Homer's separate estate for the amount of the benefit it received, and that plaintiffs are bound for that reimbursement because they accepted their mother's succession. We, of course, have found that the conveyance from Aurelien to Homer was a sale, not a donation in disguise, and that finding alone takes away the basis for defendant's argument. We also note that defendant is not an heir of Homer Thibodeaux, and he has no right to demand that Homer's separate estate be reimbursed by the community. For these reasons, we find no merit to this argument of the defendant.
Our conclusion is that the judgment of the trial court is correct and should be affirmed.
The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.